JEFFREY ALEXANDER v. THE STATE.

*No. 580. Decided December 14.*

1. **Burglary — Entry at Unusual Place — Charge.** — On a trial for a nighttime burglary, the court instructed the jury, " It is not necessary that there should be any actual breaking when the entry is made in the nighttime, but there must be some degree of force; however slight, force is sufficient. The entry by a chimney, or climbing through a window, or the entry at any unusual place, would constitute force." *Held,* correct. Penal Code, art. 708; Painter v. The State, 26 Texas Ct. App., 454.

2. **Same.**—Whether or not a window is an unusual place of entry to a house, is a question of fact to be solved by the testimony adduced.

3. **Counts in Indictment—General Verdict—Practice.**—Where an indictment contains more than one count, a general verdict of guilty will be applied to the count supported by the testimony.

4. **Same—Intent in Burglary.**—Where an indictment for burglary contains two counts, one charging the intent to commit rape, the other theft, *held,* that the evidence supporting the intent to commit theft, a general verdict would be applied to the charge contained in that count, and the conviction sustained.

5. **Presumption as to Intent.**—In burglary, though there be no direct evidence of the intent, it may be inferred from the surrounding circumstances, and ordinarily the very fact of breaking and entering, in the nighttime, raises the presumption that it was done with intent to commit theft.

Appeal from the District Court of San Jacinto.    Tried below before Hon. L. B. Hightower.

Appellant was indicted for a nighttime burglary.    The indictment contained two counts, one charging that the burglarious entry was with intent to commit rape, and the other that it was made with intent to commit theft.    At the trial he was found guilty, the verdict being a general one, and his punishment was assessed at eleven years in the penitentiary.

Miss Mary Elmore (white), sworn, testified:  Know the defendant, Jeffrey Alexander; he is that negro man, over there.  (Points out the defendant.)  Have known him a long time; he once worked for my mother.    Am 17 years old.    On the last night of July, 1891, my mother having gone on a visit to New Waverly, some of the children were sleeping in my room with me.    Was restless from the heat, and about 12 o'clock got out of bed to get some water; struck a light and lit the lamp. Heard a noise, like some one falling out of the bed, and thought it was one of the children.    My sister, about 10 years old, was sleeping in the bed with me.    Walked around the bed, and saw defendant lying on the floor near and between my bed and the wall.    Recognized him.    It was Jeffrey Alexander.    As I started around toward him, and saw him, he ran around and in front of me out of the south window, which was open. Saw him plainly.    He didn't say anything, nor did he catch hold of me. All the windows of my room were open.    I suppose defendant knew the location of the rooms, and who occupied them, as he was acquainted with the premises; had been around there, and had once worked for my mother. In my room there were two beds, one bureau, wardrobe, washstand, some clothing, and I think some jewelry.    The other smaller children were sleeping in the other bed, in the same room.    When I saw defendant I just screamed; was frightened.    My brother, 18 years of age, who was sleeping in an adjoining room, came immediately, as did also Herman Cohn, who was sleeping in an adjoining shed room, with my little brother. Defendant was gone when they came in.    Next morning, as soon as I saw my uncle, Mr. Traylor, I told him about it, and that it was the defendant, Jeffrey Alexander.

On cross-examination, she stated, that when she lighted the lamp, it was sitting on a chair by the head of her bed, and about on a level with the top of her bed.    After defendant was gone, there appeared to be nothing that was disturbed in the room.    No clothing or jewelry were missed or misplaced in the room.    The doors of my room were all fastened when I retired, and were all fastened when I got up.

J. H. Traylor (white), sworn for the State, testified:  Mrs. Elmore is my sister.  Miss Mary Elmore is my niece.  My store is about 400 yards from Mrs. Elmore's house.  Slept in my store, and took my meals at Mrs. Elmore's.  Defendant lives about 400 yards northwest of my store.

On the night of the burglary defendant was near my store about 10 o'clock at night; don't think he came in; don't know when he left. Next morning, when I went to breakfast, Miss Mary Elmore told me that some one had been in the house the night before, and told me who it was. Made an examination of the premises. Saw tracks, as if some one had been peeping in at all the windows. Saw tracks under the house, at south window of Miss Mary's room, as if some one was hiding there. Also saw some tracks at this window as if some one had jumped out of the window. Also saw signs upon the window facing, showing that some one had climbed in at the window. More tracks at this window than at the other windows, but all were tracks of the same person. Followed these tracks from the window to the public road. On the route the party had jumped over the gate. Tracked the party along the public road to my store; went in and got a rope, and followed the tracks along the public road until they passed Cohn's store, and from there along a plain path or trail to the gate where defendant lived, and where the tracks went in the gate. Defendant was standing in the yard when I got there. He had on sharp pointed shoes, like the tracks I followed to the gate.

On cross-examination, this witness said he was satisfied, from the impressions on the window facing and sills, that the party entered through the window at which he also went out. That this window was some five or more feet from the ground. There was a peculiarity about defendant's track that made me know it. He wore about a No. 9 sharp-pointed shoe, slightly run down. I followed these tracks early in the morning; sun about a half-hour high. No one had traveled along the road that morning but this party; that was the only fresh track. I arrested defendant and took him in charge.

No testimony was introduced for the defendant.

No briefs have come to the hands of the Reporter.

DAVIDSON, JUDGE.—Appellant was convicted of burglary under an indictment charging the entry, by different counts, to have been made with intent to commit theft and rape.

1. The testimony discloses that defendant, at a late hour of the night, subsequent to the retirement of the family, entered the house by climbing in through an open window, elevated five feet or more from the ground, into the room where a young lady and younger sisters were sleeping. Ignorant of his presence in the room, the young lady arose, and lighted a lamp, heard a noise as if some one had fallen on the floor, looked, and discovered the defendant secreted between her bed and the wall. He did not touch her, but, on being discovered, fled from the house, escaping from the same window through which the entry had been accomplished.

There was a bureau, wardrobe, washstand, and some jewelry and clothing in the room.   Nothing was taken from the room.   The court submitted the case upon the different counts, and the jury returned a general verdict, finding defendant guilty.   Among other things, the court charged the jury, with reference to the question of force:   *   *   *   "It is not necessary that there should be any actual breaking when the entry is made in the nighttime, but there must be some degree of force; however slight, force is sufficient.   The entry by a chimney, or climbing through a window, or the entry at any unusual place, would constitute force."

This portion of the charge was excepted to, and a counter-charge requested, which was refused.   In this there was no error.   The doors to the room, which are the usual places of entry to said room, were closed on the night of the burglary.   The window through which the entry was made, though open, was an unusual place of entrance.   Penal Code, art. 708; Painter v. The State, 26 Texas Ct. App., 454.

A window may or not be a usual place of entering a house, but this is a question of fact to be solved by the testimony adduced on the trial.   A window elevated five feet or more above the ground, as in this case, would be an unusual place of entry, especially when it is shown that the party who entered through it did so by climbing, in order to accomplish the entry.   Painter v. The State, supra.

2.   The verdict, being general, will be supported by testimony sustaining either count in the charge given.   We think the evidence is sufficient to support the conviction under the count charging the entry with intent to commit theft.   The intent with which the defendant entered the house is a fact for the jury, to be gathered from the circumstances attending the entry, and prior and subsequent thereto.   The Supreme Court of California, in a case similar to the one in hand, said:   "Though there was no direct evidence of the intent, it might be inferred from the surrounding circumstances.   The weight to be given to these was a question properly left to the jury; and when a person enters a building through a window at a late hour of the night, after the lights are extinguished, and no explanation is given of his intent, it may well be inferred that his purpose was to commit larceny, such being the usual intent under such circumstances."   The People v. Soto, 53 Cal., 415; Painter v. The State, 26 Texas Ct. App., 454; Steadman v. The State (Ga.), 8 S. E. Rep., 420; 11 Crim. Law Mag., 410; 2 Archb. Crim. Prac. and Pl., p. 1107.

Mr. Archbold says:   "Even the very fact of breaking and entering in the nighttime raises the presumption that it is done with the intent of stealing.   Where a man, in the nighttime, had entered a house by the chimney, and was found in it just above the mantlepiece, and when he found he was detected he ascended the chimney again, and got out on the roof, the jury found him guilty of burglary with intent to steal, upon

this evidence alone, and the judges confirmed the conviction." 2 Archb. Crim. Prac. and Pl., p. 1107. We find no error in the record, and the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.