### JOHN VICKERY v. THE STATE.

#### No. 1110.  Decided May 10, 1911.

**1.—Burglary—Breaking—Explanation.**

As a general rule, where there is no explanation in the evidence of a person breaking and entering the building of another, the intent to steal, etc., will be presumed; however, where the evidence showed that the breaking was publicly done and no property was taken, but the breaking and entry were evidently lone for the purpose of injuring, disarranging or destroying property in said house, or mingling oil in the carbonator of a soda manufactory, the allegation in the indictment that the burglary was committed with the intent to steal was not supported by the evidence, and the court erred in not submitting defendant's requested instructions to this effect.

**2.—Same—Charge of Court—Misconduct of Jury.**

Where, upon trial of burglary, the jury, after having been charged and retired to consider their verdict, returned into open court for additional instructions, with which ·request the court complied, laying special prominence on defendant's intent to steal, and it was shown that the conduct of the foreman of the jury, stating that a breaking alone constituted the offense, induced the jury to find a verdict of guilty, there was no reversible error.

**3.—Same—Drunkenness—Intent.**

·While drunkenness is no excuse or justification for crime, yet where in a case of burglary it was shown that defendant was very drunk at the time, and the question was one of intent, it might be a circumstance with other facts to be considered by the jury.

Appeal from the District Court of Ellis.  Tried below before the Hon. F. L. Hawkins.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*John H. Sharp* and *Farrar & McRae,* for appellant.—On question of additional instructions to the jury: Bonner v. State, 29 Texas Crim. App., 223; Irvine v. State, 20 Texas Crim. App., 12; Russell v. State, 37 Texas Crim. Rep., 314.

On question of misconduct of jury: Gilford v. State, 49 Texas Crim. Rep., 275, 92 S. W. Rep., 424.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of misconduct of jury and public policy of attacking verdict of a jury by affidavits of jurors: Weatherford v. State, 31 Texas Crim. Rep., 530; McCulloch v. State, 35 Texas Crim. Rep., 268; Mitchell v. State, 36 Texas Crim. Rep., 278.

HARPER, JUDGE.—In this case appellant was charged with the offense of burglary, in several counts, and on a trial was convicted of burglary with intent to commit theft, and his punishment assessed at two years confinement in the State penitentiary.

Defendant was a manufacturer of soda-water, and had resided at Ennis for twenty years. Charles Hogan opened up another soda-water manufactory at Ennis. Defendant met him and told him that several had tried to run an opposition manufactory to him, and he had always succeeded in putting them out of business, and it would not take him (defendant) long to put Hogan out of business. A few nights after this conversation the evidence shows that defendant broke in the door of Hogan's place of business, knocking out the glass, the noise being heard at least two blocks away. Buck Simmons, who heard the noise, went to an officer and reported the matter. The officer, upon going to the building, found defendant in the building. The owner of the property missed nothing, and appellant had nothing in his possession belonging to Hogan, but had in his hip pocket a bottle of oil and a wrench. Hogan testified:

"There was glass all over the floor and a sack of brickbats in it or on it—do not remember which. The sack is what we call a tow sack. Before I went in the building I heard the escaping water and gas which indicated that something was leaking—that there was a leak about the machinery. That leak was not there when I closed that night and went home.

"I walked back to the machine and found that leak; the first thing that attracted my attention, before I turned the light on even, I heard the water and gas leaking out of some part of the machinery, I didn't know what at that time. I walked back to the carbonator, which is the machine that mixes the water and gas to make the soda, and the leak was coming from a connection on the carbonator, and had been

loosened after I left there. It was necessary to use a wrench in loosening that; there was scratches on the nut—a brass nut that made the connection—and we also found two pipe wrenches; they were in the building when I got there, or when I saw them.

"The carbonator mixes the water and gas. If some kind of substance or liquid or fluid had been poured into the carbonator where the nut had been loosened and the leak was, it would have mixed with the carbonated water, whatever it was. That carbonated water goes into the soda water after, or on top of, the syrup. Then that soda water is bottled and is the soda water that goes out to the customers."

Mr. Shankle, an officer, testified that when it was reported to him about hearing the door crash he went to the building and found the door broken open. "It was dark, and hearing some one in there, he ordered him to come, and Mr. Vickery came, and he took from him a wrench and a bottle of oil. That Roller, who had been seen with defendant a short time before, was outside of the building, and he took a wrench away from him." It may be assumed that the State proved beyond any doubt that defendant broke in the door and went into the building, but the object and purpose of doing so is not so manifest. The State's theory was that, having shown that defendant broke and entered the house, it might be presumed that he did so with the intent to commit theft, even though at the time he was detected he had not appropriated any property. This is the general rule when there is no explanation in the evidence of a person breaking and entering the building of another. In the case of Alexander v. State, 31 Texas Crim. Rep., 359, this court held:

"We think the evidence is sufficient to support the conviction under the count charging the entry with intent to commit theft. The intent with which the defendant entered the house is a fact for the jury, to be gathered from the circumstances attending the entry, and prior and subsequent thereto. The Supreme Court of California, in a case similar to the one in hand, said: 'Though there was no direct evidence of the intent, it might be inferred from the surrounding circumstances. The weight to be given to these was a question properly left to the jury; and when a person enters a building through a window at a late hour of the night, after the lights are extinguished, and no explanation is given of his intent, it may well be inferred that his purpose was to commit larceny, such being the usual intent under such circumstances.' The People v. Soto, 53 Cal., 415; Painter v. The State, 26 Texas Crim. App., 454; Steadman v. The State (Ga.), 8 S. E. Rep., 420; 11 Crim. Law Mag., 410; 2 Archb. Crim. Prac. and Pl., p. 1107.

"Mr. Archbold says: 'Even the very fact of breaking and entering in the nighttime raises the presumption that it is done with the intent of stealing. Where a man, in the night-time, had entered a house by the chimney, and was found in it just above the mantelpiece, and when he found he was detected he ascended the chimney again, and got out

on the roof, the jury found him guilty of burglary with intent to steal, upon the evidence alone, and the judges confirmed the conviction.'"

In this case, however, the evidence of the defendant would tend to show that he had lived in Ellis County for twenty years and had always borne the reputation of being an honest man; that on the night in question he was drinking more or less, and, as he claimed, to the extent he did not know what he was doing; that about ten minutes before breaking into the house he talked to the officer who afterwards arrested him, and went from him to the building of Hogan, breaking in the front door, making a noise that was heard blocks away; there was no silent or stealthy entry; and, inasmuch as no property was taken, but the only damage done was the unscrewing of the bolts and nuts, where if oil or other substance was placed it would ruin the flavor of the manufactured soda water, and that the oil found on defendant was lubricating oil, and he had no matches, defendant's contention was that an issue was raised by the evidence that defendant's object and purpose in breaking and entering the house was to damage the quality of Hogan's soda water, and thus injure his trade. Taking all the facts into consideration, we are inclined to think that the special charge requested by defendant should have been given, which is as follows:

"Before you would be warranted in convicting defendant for burglary, you must believe beyond a reasonable doubt that he broke and entered the house of Charley Hogan with the specific intent at the time to commit either the crime of theft or arson. If he broke and entered such house with any other intent or purpose he would not be guilty of burglary, and in this connection you are instructed that if you should find beyond a reasonable doubt that if defendant broke and entered said house, but if you further believe such breaking and entry, if any, was for the purpose of injuring, disarranging, or destroying property therein, or mingling oil in the carbonator, or for any other purpose than theft or arson, then you will find defendant not guilty."

The failure to give this charge in connection with the matters complained of in bill of exceptions No. 1, together with the charge given and copied in said bill, may have unduly influenced the jury. Said bill is as follows:

"Be it remembered that upon the trial of the above-styled and numbered cause the following proceedings were had: After the court had given his main charge to the jury, and after said jury had deliberated for several hours, the jury returned and asked the court verbally, for additional instructions, and the court then in writing gave them an additional instruction as follows: 'Gentlemen of the jury, in response to your verbal request for additional instructions, you are instructed that if you believe from the evidence beyond a reasonable doubt that the defendant broke and entered the house at night with the intent to commit the crime of theft, then the offense of burglary with intent to steal would be complete, although no theft was actually committed.'

"Defendant at the time objected to the court giving said additional

instruction on the grounds that the court had already fully instructed the jury on said issue in his main charge, and that such additional instruction made a double instruction on the same point and gave undue prominence thereto; and because said instruction was upon the weight of the evidence in this, to wit: Its effect was to withdraw from the jury the fact that no theft was committed as a circumstance which the jury look to in determining whether or not the breaking was with intent to steal, and because said instruction was calculated to mislead the jury and induce them to believe that defendant's failure to commit the crime of theft was unimportant as a circumstance in determining what his intent was.

"And be it further remembered that said additional instruction under the existing conditions in the jury box at the time given was argumentative and very prejudicial to the defendant, because at the time the jury was evenly divided as to defendant's guilt, upon the question of his intent, and the foreman of the jury was urging extraneous matters in connection with this charge in the jury room and in the presence of and to the other jurors in this, to wit, that he, said foreman, had once killed a negro who had broken into his house, and the courts cleared him on the ground that the negro was guilty of burglary. All of which matters of fact are preserved in the record in the affidavits of jurors Alexander and Heine, in Exhibit 'B' accompanying the sixth paragraph of the defendant's motion for a new trial, and by reason of which said additional charge became and was argumentative and greatly to the prejudice of the defendant's rights."

Two members of the jury, L. B. Alexander and Lee Heine, testify on the motion for a new trial:

"Affiant says that the case was delivered to them about eleven o'clock Friday morning, October 28, 1910, and that thereafter the jury stood six for conviction and six for acquittal until the morning of the next day, the disagreement being as to whether defendant broke and entered Hogan's house for the purpose of theft or for some other purpose.

"Affiant says that there was much discussion in the jury room on this question, and the foreman, E. C. Cross, stated and argued several times that if he broke into the house it would be burglary, and he knew, because he once killed a negro who broke into his house, and the courts cleared him on the ground that the negro was guilty of burglary. After it was suggested by some one of the jurors that additional instructions be obtained from the court, two of the jurors, one of whom affiant thinks was juror Hibler, the other an old gentleman who lives at Italy, but whose name affiant can not now recall, stated in substance that if it was like Cross said as to the law they would vote guilty. And on Saturday morning the jury in a body obtained from the court the additional instructions, and said two jurors immediately changed their verdict to guilty. And after some further discussion the other jurors agreed on returning a verdict of guilty."

There was no denial that defendant broke in the door and entered

the house. The only issue in the case was, With what intent did he do so? If he went in there and all he did was to unscrew the bolts and nuts of the machinery with the intent to place oil therein to ruin the flavor, this would not constitute burglary, and under the facts of this case we can not say that the argument of the foreman of the jury, and the other matters complained of, were not instrumental in causing the jury to find that entry was made with the intent to commit theft. We do not wish to be understood as holding that drunkenness is any excuse or justification for crime in this State, but the fact that he was drunk might be a circumstance, with other facts in the case, to consider in arriving at what was his intent in entering the building—to injure the flavor of the soda water or to commit theft. In either event the defendant is guilty of an offense. One, however, to go into the house with intent to mix oil with the soda water, is a misdemeanor, while the other is a felony, and the defendant having been found guilty of the higher grade and sentenced to the penitentiary, we think on account of the matters complained of a new trial should have been granted.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*