STATE OF NORTH CAROLINA v. THOMAS JEREMIAH REDMOND

No. 7222SC219

(Filed 24 May 1972)

**Burglary and Unlawful Breakings § 5— felonious breaking and entering — intent to steal**

The evidence was sufficient to sustain a verdict of guilty of the felony of breaking and entering a dwelling house with intent to steal, where it tended to show that defendant entered a dwelling after dark by opening a closed front door, that defendant was found under the bed in an upstairs bedroom, and that defendant fled after being discovered, notwithstanding there was no evidence that anything was stolen from the dwelling.

APPEAL by defendant from *Lupton, Judge,* August 1971 Session, IREDELL Superior Court.

The defendant and his attorney duly entered a waiver of indictment and defendant was tried upon an Information properly charging him with the felony of breaking and entering a dwelling house with intent to steal. To the charge contained in the Information the defendant entered a plea of not guilty.

The evidence on behalf of the State tended to show that on 11 September 1970, Mary Lizzie Bruce owned and lived in a home located on the Old Mocksville Highway. Her son, Hoyt Lee Bruce, and his wife lived with her. About 5:00 p.m. the defendant drove an automobile into the yard of the Bruce home. Mrs. Rebecca Bruce, the daughter-in-law, went out on the porch and asked the defendant what he wanted. The defendant inquired as to where Pink Murdock lived. Rebecca Bruce told him where Pink Murdock lived and then went in the house to the kitchen where Mary Lizzie Bruce was eating her supper. The defendant followed her into the house and stood in the kitchen doorway for some twenty-five or thirty minutes. Mary Lizzie Bruce asked him to leave three different times and finally the defendant left. About 6:30 p.m. Hoyt Bruce, the son of Mary Lizzie Bruce, and the husband of Rebecca Bruce came in from work. He remained in the house a few minutes and then he and his wife went to see a neighbor and left Mary Lizzie Bruce with the three children, the oldest being three years old. It was after dark. Mary Lizzie Bruce was sitting in the living room rocking the baby to sleep when she thought she heard the front door, which had been closed, open. She got up and looked and found the front door partly open and thought she saw someone going up the steps, but she was not sure of this. Some fifteen or twenty minutes later Hoyt Bruce and his wife returned to the house. Mary Lizzie Bruce did not tell her son that she thought someone had entered the house because she had looked and had not seen anyone. When Hoyt and Rebecca had returned home, they observed a pair of shoes on the front porch. Hoyt asked his mother if she knew whose shoes they were and she replied that she did not. About this time a noise was heard upstairs. Hoyt got his single-barrel shotgun and went upstairs. The defendant was found under the bed in an upstairs room. Hoyt sent a neighbor boy to call the sheriff and told the defendant to remain seated on the steps until the sheriff arrived. Instead of doing this, the defendant began to move down the steps and

Hoyt shot at him but missed. The defendant jumped through a kitchen window taking the frame and all with him. A few minutes later officers from the Sheriff's Department arrived but they were unable to find anyone. Hoyt Bruce remained in the yard after the officers left, and within a short while thereafter, saw the defendant. Hoyt ordered him to stop, but the defendant started running and Hoyt shot at him again. This time bird shot entered the legs of the defendant. The defendant kept running and later appeared across a field. This time Hoyt pointed the gun at him and the defendant fell down in the edge of the field and lay there until the sheriff's officers returned and arrested him. The defendant had no shoes on. The shoes which were found on the front porch of the Bruce home were brought to the defendant and he put them on.

The defendant testified in his own behalf and denied that he had been at the Bruce home but did admit that the shoes which were brought to him were his shoes.

*Attorney General Robert Morgan by Assistant Attorney General H. A. Cole, Jr., for the State.*

*Pope, McMillan and Bender by William P. Pope for defendant appellant.*

CAMPBELL, Judge.

The defendant assigns as error the sufficiency of the evidence to sustain a verdict of guilty of felonious breaking and entering because there was no evidence that the defendant intended to commit any crime since nothing was taken from the house.

There is no merit in this position.

In the case of *State v. McBryde*, 97 N.C. 393, 1 S.E. 925 (1887), it is stated:

". . . The intelligent mind will take cognizance of the fact, that people do not usually enter the dwellings of others in the night time, when the inmates are asleep, with innocent intent. The most usual intent is to steal, and when there is no explanation or evidence of a different intent, the ordinary mind will infer this also. The fact of the entry alone, in the night time, accompanied by flight when discovered, is some evidence of guilt, and in the absence of

any other proof, or evidence of other intent, and with no explanatory facts or circumstances, may warrant a reasonable inference of guilty intent. . . ."

As stated in *State v. Tippett*, 270 N.C. 588, 155 S.E. 2d 269 (1967),

"[A]ctual commission of the felony, which the indictment charges was intended by the defendant at the time of the breaking and entering, is not required in order to sustain a conviction of burglary. . . ."

We hold that the evidence in this case was ample to be submitted to the jury and to sustain the jury's verdict of guilty.

No error.

Chief Judge MALLARD and Judge BROCK concur.