**UNITED STATES of America**
v.
**Thomas MELTON, Jr., Appellant.**
**No. 72-1357.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 23, 1973.

Decided Sept. 26, 1973.

As Amended on Rehearing and/or Suggestion for Rehearing En Banc Jan. 11, 1974.

Paul M. Tschirhart, Washington, D. C. (appointed by this Court), for appellant.

Emmett B. Lewis, Atty., Dept. of Justice of the bar of the Supreme Court of Ohio, pro hac vice, by special leave of Court, with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, and Philip L. Cohan, Asst. U. S. Attys., at the time the brief was filed, were on the brief, for appellee.

Before BAZELON, Chief Judge, and WRIGHT and MacKINNON, Circuit Judges.

BAZELON, Chief Judge:

Appellant was tried before a jury and convicted of first degree burglary. At trial, the following story emerged. At about 10 p. m. on January 29, 1971, Mrs. Vessels was asleep on the second floor of her home, when she was awakened by a loud noise from downstairs. She went to the foot of the stairs where she could clearly see that the noise had been caused by someone knocking over several pieces of plywood, which had been stacked against a door opening inward from an unheated sunroom. When she went outside, she discovered that a screen door to the kitchen had been cut

but the door itself had not been opened and that a window leading into the sunroom had been opened and left ajar.

After surveying the outside of the house, Mrs. Vessels went to her next door neighbor's home and called the police. A patrol car responded in about five minutes. After Mrs. Vessels told the policemen what had happened, they went to her house to investigate. Coming to the partially opened sunroom door, they immediately saw appellant lying on the floor. They arrested and searched him without incident; no weapons, burglary tools or stolen goods were found. Nothing of value in the house had been moved so as to indicate an attempt to steal.

## I.

Appellant was charged with first degree burglary—the unlawful breaking and entering into the dwelling of another while a person was present therein with the intent to commit a criminal offense [1]—in this case, larceny. At the close of the government's case, defense counsel moved for a directed verdict of acquittal for a failure of proof on the question of ultimate criminal intent. The trial judge agreed that there had been *no* evidence introduced demonstrating the intent to commit a crime after entry.

> I find that he entered and that there was an unlawful entry, no question about it, but I don't find any evidence here of intent to steal; unlawful entry just isn't [inconsistent] with intending to enter for some other purpose.

Nonetheless, after reviewing points and authorities for both sides, the trial judge concluded that mere unlawful entry into another's house supports an in-

ference that the interloper was there to steal. Accordingly, he denied the defense motion for acquittal and submitted the charge of burglary to the jury. On this appeal, we concern ourselves only with the discrete legal issue of whether that ruling was premised on an erroneous interpretation of law.

## II.

The trial judge erred in submitting a burglary charge to the jury where he found a complete absence of any evidence of an intent to commit a crime after the unlawful entry. By doing so, the trial judge invited the jury "to conjecture merely, or to conclude upon pure speculation or from passion, prejudice or sympathy," rather than any factual predicate, why appellant entered the dwelling.[2]

In addition, the trial court's ruling conflicts with the statutory scheme of property offenses. Unlawful entry carries a maximum penalty of six months' imprisonment.[3] First degree burglary carries a penalty of not less than five or more than thirty years.[4] The element that distinguishes burglary from unlawful entry is the intent to commit a crime once unlawful entry has been accomplished.[5] To allow proof of unlawful entry, *ipso facto*, to support a burglary charge is, in effect, to increase sixty-fold the statutory penalty for unlawful entry.

## III.

The trial judge relied on three cases to sustain his ruling on the motion for acquittal—Cady v. United States, 54 App.D.C. 10, 293 F. 829 (1923); Washington v. United States, 105 U.S.App.D.C. 58, 263 F.2d 742 (1958), cert. denied, 359 U.S. 1002, 79 S.Ct. 1142, 3 L.Ed.2d

---

1. 22 D.C.Code § 1801(a) (Supp. V 1972).

2. Curley v. United States, 81 U.S.App.D.C. 389, 391–392, 160 F.2d 229, 232–233, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

3. 22 D.C.Code § 3102.

4. 22 D.C.Code § 1801 (Supp. V 1972).

5. *See, e. g.,* United States v. Thomas, *supra*, 444 F.2d at 925; United States v. Whitaker, 144 U.S.App.D.C. 344, 447 F.2d 314 (1971); cases collected at United States v. Sinclair, 144 U.S.App.D.C. 13, 444 F.2d 888, 891 n. 9 (1971) (Robinson, J., dissenting).

1032 (1959); and United States v. Thomas, 144 U.S.App.D.C. 44, 444 F.2d 919 (1971). These decisions do not control the case before us. In *Washington*, there was evidence that, after gaining entry, the defendant attacked and assaulted two of the occupants, as an indication of his ultimate criminal intent. In *Cady*, there was evidence of flight. More importantly, *Cady* and *Washington* must be construed in light of our subsequent holding in United States v. Fox, 140 U.S.App.D.C. 129, 433 F.2d 1235 (1970). There we affirmed a burglary conviction of a defendant who was apprehended carrying cigarettes out of a closed supermarket, while it was being looted. The court pointedly observed:

> Standing alone, unauthorized presence in another's premises hardly supports an inference of entry with a criminal purpose, but when aided by other circumstances it might very well. 433 F.2d at 1237.

More recently the court referred to this issue in dicta in *Thomas*, which held that where the intent for the ultimate crime was indefinite, an indictment for burglary might allege an intent to steal. Since, however, the indictment returned against Thomas did not specify an intent to commit any criminal offense his conviction was reversed. The court noted, in language clearly unnecessary to its holding, that the circumstances of a defendant's entry, if unexplained, "may furnish the basis for an inference that the entry was made with the intent to commit larceny." 444 F.2d at 924. The court's rationale was articulated as follows:

> The usual object [of such an entry] is theft, and this is the inference ordinarily to be drawn, in the absence of explanation, from breaking and entering at night, *accompanied by flight upon discovery*, even though nothing has been taken, 444 F.2d at 924 quoting State v. Woodruff, 208 Iowa 236, 225 N.W. 254, 255 (1929). (emphasis supplied).

In each of the cases on which the trial judge relied in making his ruling, some circumstantial evidence of the requisite intent to commit a crime on the premises was either shown or noted—flight upon discovery, carrying or trying to conceal stolen goods, an assault upon a resident. Here, as the trial judge noted, there does not appear to be any circumstantial evidence of an ulterior criminal purpose other than the unlawful entry itself. Appellant did not attack Mrs. Vessels after she had discovered his presence. Despite a readily accessible means of escape provided by the nearby opened window, appellant did not escape during the several minutes between his discovery and his apprehension. Appellant had no stolen goods, weapons, or burglary tools with him when apprehended. He could not have been concealed, since the arresting officers saw him immediately upon peering through the door into the sunroom, nor did he resist arrest.

█ Nor should the fact that the unlawful entry occurred in the nighttime support the inference of intent to steal. An element of common law burglary was that it occurred at night;[6] nighttime entry was seen as more likely to pose a threat to occupants. Congress abolished the "nighttime" requirement and focused instead on the specific consideration—the danger to occupants of a home. First degree burglary requires entrance into a dwelling while someone is present; second degree burglary, to which lesser penalties attach, requires neither that the building be a dwelling nor that it be occupied.[7] The "common

---

6. *See, e. g.*, Perkins on Criminal Law at 193 (1969).

7. 22 D.C.Code § 1801(b) (Supp. V. 1972). Allowing *nighttime* entry to *ipso facto* support a burglary conviction would produce anomalous results that could not have been intended by Congress. Defendant A enters an occupied dwelling half an hour after sunset. Defendant B did so an hour earlier. Defendant C unlawfully enters an empty warehouse late at night. Defendant A could be found guilty of first degree burglary, and sentenced to 30 years. Defendant B who poses

law" nighttime element, clearly abandoned by Congress, should not be resurrected by judicial fiat to make an act proscribed by Congress as a breaking and entering into a first degree burglary. It is true that some courts would infer an intent to steal from an unexplained nighttime intrusion. Some states provide by statute for a presumption of burglarious intent to arise from such unexplained conduct.[8] Congress has not done so. Rather, it enacted a comprehensive scheme of property offenses which should not be confounded by us.

## IV.

Appellant's burglary conviction is therefore reversed. Although the trier of fact necessarily found the facts required for conviction of the lesser included offense of unlawful entry, it would be inappropriate to remand this case to allow the trial judge to enter a conviction on that charge. The cases in which we adopted that procedure have usually involved a wrongful refusal to instruct on the lesser included offense,[9] while here defense counsel specifically eschewed such an instruction. The government has ample opportunity to have appellant's guilt of unlawful entry decided by the jury. It chose not to do so and to seek a conviction only on the greater offense. It is bound by that choice. The judgment below is

Reversed.

---

as great a threat to the security of the occupants, could be found guilty only of breaking and entering and subject to a maximum sentence of 6 months. Defendant C, who poses no threat to anyone may be found guilty of second degree burglary and sentenced to 15 years in prison. Congress wisely concluded that the issue should be why—not at what time—the defendant unlawfully entered.

8. *See, e. g.,* Bayless v. United States, 381 F. 2d 67, 75–77 (9th Cir. 1967) (construing R.C.W.A. 9.19.010–9.19.030).

9. United States v. Whitaker, 144 U.S.App. D.C. 344, 447 F.2d 314 (1971) ; United States v. Seegers, 144 U.S.App.D.C. 162, 445 F.2d

---

MacKINNON, Circuit Judge, dissenting:

In an unprecedented opinion in the criminal law of the United States reversing this conviction for first degree burglary without even a remand, the majority rests its reversal on what it asserts to be an absence of "any evidence of an intent to commit a crime after the unlawful entry."[1] Quite to the contrary, it must be concluded under well settled principles of criminal law in this jurisdiction and elsewhere that the record contains ample evidence to support the trial judge's decision to submit the issue of intent to steal to the jury. Hence the following dissent.

Stating the facts in the light most favorable to the Government as should be done,[2] the evidence indicates that around 10 P.M. on January 29, 1971, appellant broke into Mrs. Vessels' two-story house by prying open and breaking the lock to the window of the sun room.[3] Appellant had first attempted to gain entrance through the back door where he cut open the screen door, but had failed to penetrate the locked door.[4] The sun room was used as an unheated storage room by Mrs. Vessels, and while in this room appellant next tried to gain further entrance into the interior of the house through some French doors.[5] However, as appellant opened these French doors, he knocked over "nine pieces of half-inch thick 2 x 4 plywood" which had been "stacked" against the doors.[6] This noise awakened Mrs. Ves-

---

232 (1970) ; United States v. Huff, 143 U.S. App.D.C. 163, 442 F.2d 885 (1971), *cf.* United States v. Thomas, 144 U.S.App.D.C. 44, 444 F.2d 919 (1971) (an indictment which was faulty to charge burglary, nonetheless, did adequately charge an unlawful entry.)

1. P. 47, majority opinion.

2. United States v. Fox, 140 U.S.App.D.C. 129, 131, 433 F.2d 1235, 1237 (1970).

3. Tr. 18, 19.

4. Tr. 18.

5. Tr. 17, 18.

6. Tr. 17.

**50**

sels, who, after noticing the disturbed plywood, the open window and the screen-cut on the back door, quickly had called the police from her neighbor's house.[7] Two policemen arrived within two to five minutes.[8] They went into the house, and saw appellant "on the floor by the window," [9] i. e., in the sun room next to the open window. After commanding him "don't move," [10] the officers "walked over" to him, "he rose up" and they arrested him.[11]

The majority opinion states, inter alia, "Nothing of value in the house had been moved so as to indicate an attempt to steal." [12] (Emphasis added.) This statement is erroneous as the transcript discloses:

Q. Now when you [Mrs. Vessels] came down and after you went back in the house, when the police came, did you find anything else [other than the plywood] disturbed in the house?

A. Yes, there were things disturbed in the sunroom.

Q. What?

A. Well, there were things which were broken in there because there were things stored there. There was a clock which was broken, a lamp, some paintings in frames, which were there, and there were some pieces of gill [sic] which had been bent because they were on the floor. (Emphasis added.)

The clock, the lamp and the pictures were clearly "items of value," and there is no evidentiary support in the record for the gratuitous conclusion of the majority opinion that these items of value had not "been moved so as to indicate an

attempt to steal." There was no specific testimony as to why the goods had been moved, but they had been disturbed by the appellant and the conclusion as to what such acts indicated as to appellant's intent was within the province of the jury. The jury would have been perfectly justified in concluding that such acts by appellant indicated an "attempt" or more importantly, an intent "to steal" on his part; and on this appeal the record must be read in the light most favorable to the jury's verdict. Thus, the inference in this respect which is drawn by the majority opinion is impermissible.

The majority opinion also asserts that appellant did not "resist arrest" [13] but the transcript is silent or equivocal on this point. Appellant's trial counsel attempted to suggest in his cross examination of Mrs. Vessels that the "items of value" in the sun room were "destroyed in the arrest of the Defendant," [14] which suggests that he resisted arrest. The suggestion was not denied by Mrs. Vessels,[15] but neither was it admitted. His counsel in his opening statement also stated that when appellant was arrested, "he started to struggle." [16] The statement in the majority opinion that appellant did not "resist arrest" thus finds no support in the evidence, and what slight indication there is in the evidence indicates that he did resist arrest and defense counsel so contended in final argument.[17] The police officer was not interrogated on the subject.[18] The record thus would permit the jury to have inferred that appellant had disturbed these items while searching for something to steal before his arrest or

7. Tr. 18.

8. Tr. 19, 27.

9. Tr. 29. Appellant's counsel in his opening statement stated to the jury that appellant "was down on all fours" (Tr. 15). Government counsel in his opening statement stated that when the police entered the appellant was on the sunporch "down in the corner, hunched down . . . " (Tr. 10).

10. Tr. 29.

11. Id.

12. P. 47, majority opinion.

13. Id. at 5.

14. Tr. 23.

15. Id. "These things were in the sun room and this is where he was found."

16. Tr. 15.

17. Tr. 15, 23, 57, 58.

18. Tr. 26–30.

that he did resist arrest. Either finding would support a conclusion under applicable burglary law that appellant had an intent to steal.

At this point in the opinion it is appropriate to set forth the language of the indictment, to wit:

> On or about January 29, 1971, within the District of Columbia, Thomas Melton, Jr., also known as Thomas N. Melton, entered the dwelling of Blanche T. Vessels, while Blanche T. Vessels was inside the dwelling with intent to steal property of another.

This charge was laid pursuant to D.C. Code § 22–1801(a).[19] As to the additional facts which support a finding that appellant entered the house with intent to steal, there are a number of facts here from which the jury could infer that appellant entered the house with an intent to steal, and thus place the jury verdict beyond one based on conjecture or speculation.

First, and most important, is the fact that the entry was made in the nighttime.[20] The law is clear in this circuit that a jury may infer an intent to steal from a breaking and entering of an occupied dwelling place in the nighttime, where the defendant can offer no other explanation for his presence. Washington v. United States, 105 U.S.App.D.C. 58, 263 F.2d 742, cert. denied, 359 U.S. 1002 (1959); Cady v. United States, 54 App.D.C. 10, 293 F. 829 (1923).[21] This is *not* a required inference which the jury must make when there is a breaking and entering in the nighttime, but it is almost universally held that the jury may draw this inference based *solely* upon such an entry in the nighttime, in the absence of evidence suggesting another explanation for the unlawful entry. Gibson v. State, 49 Ala. App. 18, 268 So.2d 49 (1972); People v. King, 2 Ill.App.3d 870, 275 N.E.2d 918 (1971); Garcia v. People, 172 Colo. 329, 473 P.2d 169 (1970); Dixon v. State, 240 So.2d 289 (Miss.1970); State v. Wills, 107 N.H. 107, 218 A.2d 47 (1966); People v. Johnson, 28 Ill.2d 441, 192 N.E.2d 864 (1963); Behel v. State, 40 Ala.App. 689, 122 So.2d 537 (1960); Garrett v. State, 350 P.2d 983 (Okl.Cr.1960); Sikes v. State, 166 Tex.Cr.R. 257, 312 S.W.2d 524 (1958); State v. Tellay, 7 Utah 2d 308, 324 P.2d 490 (1958); State v. Gatewood, 169 Kan. 679, 221 P.2d 392 (1950); State v. Woodruff, 208 Iowa, 236, 225 N.W. 254 (1929)[22]; State v. Fox, 80 Iowa 312, 45 N.W. 874 (1890); State v. Maxwell, 42 Iowa 208 (1875). And where there is additional evidence tending to show intent to steal, as there

19. D.C.Code § 22–1801(a) provides:
     (a) Whoever shall, either in the nighttime or in the daytime, break and enter, or enter without breaking, any dwelling, or room used as a sleeping apartment in any building, with intent to break and carry away any part thereof, or any fixture or other thing attached to or connected thereto or to commit any criminal offense, shall, if any person is in any part of such dwelling or sleeping apartment at the time of such breaking and entering, or entering without breaking, be guilty of burglary in the first degree. Burglary in the first degree shall be punished by imprisonment for not less than five years nor more than thirty years.

20. The evidentiary inferences that are deducible from this fact are illogically ignored by the majority opinion confusing the statute with the rule of evidence.

21. United States v. Fox, 140 U.S.App.D.C. 129, 433 F.2d 1235 (1970) is not to the contrary. There, as the majority opinion notes, the court stated that "unauthorized *presence* in another's premises hardly supports an inference of entry with a criminal purpose, *but when aided by other circumstances it very well might.*" 140 U.S.App.D.C. at 131, 433 F.2d at 1237 (emphasis added). As this dissent demonstrates, there were "other circumstances" present here.

22. The majority opinion suggests that *Woodruff*, as with the other cases relied on by the trial judge, can be distinguished, presumably on the basis of flight. There was, however, no flight in *Woodruff*. The quote from *Woodruff*, cited by the majority and also quoted in United States v. Thomas, 144 U.S.App.D.C. 44, 49, 444 F.2d 919, 924 (1971), wherein there is a reference to flight, is actually from State v. Teeter, 69 Iowa 717, 27 N.W. 485 (1886), and is cited by the *Woodruff* court only for support.

is here,[23] it is universally recognized that forcible entry in the *nighttime* is strong circumstantial evidence indicating the entrant had such an intent. Haynes v. State, 49 Ala.App. 16, 268 So.2d 47 (1972); State v. Redmond, 14 N.C.App. 585, 188 S.E.2d 725 (1972); Graham v. State, 487 S.W.2d 359 (Tex.Cr.App. 1972); Hutchinson v. State, 481 S.W.2d 881 (Tex.Cr.App.1972); State v. Barclay, 54 Wis.2d 651, 196 N.W.2d 745 (1972); People v. Rossi, 112 Ill.App.2d 208, 250 N.E.2d 528 (1969); Strait v. State, 41 Wis.2d 552, 164 N.W.2d 505 (1969); State v. Allnutt, 261 Iowa 1083, 156 N.W.2d 266 (1968); People v. Walters, 249 Cal.App. 547, 57 Cal.Rptr. 484 (1967); People v. Lambo, 8 Mich.App. 320, 154 N.W.2d 583 (1967); Briones v. State, 363 S.W.2d 466 (Tex.Cr.App. 1963); State v. Hopkins, 11 Utah 2d 363, 359 P.2d 486 (1961); Commonwealth v. Eppich, 342 Mass. 487, 174 N. E.2d 31 (1961); Commonwealth v. Ronchetti, 333 Mass. 78, 128 N.E.2d 334 (1955); Ex. parte Seyfried, 74 Idaho 467, 264 P.2d 685 (1953); Nichols v. State, 207 Miss. 291, 42 So.2d 201 (1949); Drennan v. State, 69 Okl.Cr. 348, 102 P.2d 952 (1940); Vickery v. State, 62 Tex.Cr.R. 311, 137 S.W. 687 (1911); Moseley v. State, 92 Miss. 250, 45 So. 833 (1908); People v. Noon, 1 Cal.App. 44, 81 P. 746 (1905); State v. Worthen, 111 Iowa 267, 82 N.W. 910 (1900); Mullins v. State, 35 Tex.Cr.R. 149, 32 S.W. 691 (1895); Alexander v. State, 31 Tex.Cr.R. 359, 20 S.W. 756 (1892); Steadman v. State, 81 Ga. 736, 8 S.E. 420 (1888); State v. McBryde, 97 N.C. 393, 1 S.E. 925 (1887); State v. Teeter, 69 Iowa 717, 27 N.W. 485 (1886); Commonwealth v. Shedd, 140 Mass. 451, 5 N.E. 254 (1886); People v. Morton, 4 Utah 407, 11 P. 512 (1886); People v. Soto, 53 Cal. 415 (1879); Woodward v. State, 54 Ga. 106 (1874); Rex v. Brice, 168 Eng.Rep. 892 (1821).

The majority opinion at page 48 asserts that the " 'common law' nighttime element [was] abandoned by Congress."

This is incorrect, the "nighttime" provision was retained and additional features were *added* thereto which broadened the crime (*see* n.19 for the statute). In attempting to make its point in this respect the majority opinion gets mixed up over what is involved and completely misses the mark, *i. e.*, that we are not relying upon the provisions of a statute but upon an evidentiary inference that, while it may have been recognized at common law, really rests on *common sense* and is just as valid today as heretofore. In fact, the long line of unbroken authorities, quoted above, indicate it is the applicable law in the United States, including this court, in all decisions except the preceding majority opinion. The cases cited above are based on the common sense rationale that a person who breaks into and enters a dwelling or building in the nighttime, if no other motive is apparent, generally has the purpose of stealing something. Were the law otherwise, every unsuccessful nighttime burglar, caught before he could steal anything, would be guilty only of unlawful entry, but as the above cited cases show, the law has universally been held to be to the contrary for more than a century. Certainly there are situations where a person may break into a dwelling or building in the nighttime with an innocent intent. However, the cases cited above recognize such an innocent intent might occur, and they hold only that where a defendant completely fails to explain his presence or there is a lack of another explanation, then the jury *may* infer an intent to steal.

Despite this large body of case law, some of which is in this circuit, the majority opinion suggests that there is no controlling authority contrary to the position it takes. It is submitted that Washington v. United States, 105 U.S. App.D.C. 58, 263 F.2d 742, cert. denied, 359 U.S. 1002, 79 S.Ct. 1142, 3 L.Ed.2d 1032 (1959) and Cady v. United States, 54 App.D.C. 10, 293 F. 829 (1923) directly control this factual situation and

---

23. See text accompanying note 27 et seq., *infra*.

require affirmance. In *Cady* a witness heard a noise coming from a neighbor's garage about 7 A.M. and walked over to investigate. He found the padlock from the garage door on the ground and saw three men inside. When the three men saw the witness "they came out of the garage without closing the doors behind them. Witness asked them if they were going to close the doors. They made no response, but got into a waiting automobile and drove away."[24] There was no evidence that anything was missing and the witness's account was the only evidence. The court found that this constituted sufficient evidence to submit the issue of intent to steal to the jury. The court quoted from three state cases which permitted an inference of intent to steal from the unexplained breaking and entrance into a dwelling at night.[25] In one of these cases the defendant had made contradictory statements about his name and address to the police. The court in *Cady* stated, "To be sure we have no contradictory statements here, but the failure of the defendants in the circumstances to give any reason for their presence is just as significant."[26]

The majority opinion finds that *Cady* does "not control" because "there was evidence of flight"—implying that the *Cady* court relied on the fact that the defendants ran away when they were caught in the act. Yet there is *no* evidence of "flight" there, but only that the defendants "came out of the garage without closing the doors" and left without responding to the witness's question. There is just no evidence that the court there characterized this exit as "flight" from which an incriminatory intent could be inferred. Rather, the court seems to have valued the fact of the egress only because the defendants failed to explain their presence. In short, *Cady* must be read as holding that when there is a breaking and entering of a building in the early morning such

entry may support an inference by the jury that the entrant possessed an intent to steal, where no counter-explanation is offered.

In *Washington* the defendant was convicted of assault and of housebreaking with intent to steal. The defendant broke into a house around midnight by forcing open a kitchen window. While in the house, defendant went into a girl's bedroom where the child was asleep. She awoke, screamed, and was hit on the head by defendant. Her grandfather was also awakened and he struck defendant with a cane as he fled. With respect to the sufficiency of the evidence to permit the jury to infer an intent to steal, the court said:

> In the circumstances of this case intent need not be shown by any specific acts or conduct; the unexplained presence of appellant in the darkened house near midnight, access having been by force and stealth through a window, is ample *without more* to allow an inference that he was there to steal. See Cady v. United States, 1923, 54 App.D.C. 10, 293 F. 829.

105 U.S.App.D.C. at 61, 263 F.2d at 745 (emphasis added). The majority opinion finds that *Washington* does "not control" because it asserts "there was evidence [in *Washington*] that, after gaining entry, the defendant attacked and assaulted [one] of the occupants, as an indication of his ultimate criminal intent." Again it is submitted that such grounds for distinguishing this case are unsubstantial and without foundation. Granted that the defendant in *Washington* did commit an assault after entry, yet the court there makes it eminently clear that the facts supported the jury's conclusion that the *entry* was made with an intent to steal, and not with an intent to commit another crime—viz. assault. In fact, the defendant tried to argue that his assault on the girl negated any

---

24. 54 App.D.C. at 11, 293 F. at 830.

25. Steadman v. State, 81 Ga. 736, 8 S.E. 420 (1888); Commonwealth v. Shedd, 140 Mass. 451, 5 N.E. 254 (1886); People v. Soto, 53 Cal. 415 (1879).

26. 54 App.D.C. at 12, 293 F. at 831.

54

intent to steal and the court expressly rejected this argument:

> That he committed the crime of assault on a girl after the illegal entry was completed does not call for a different conclusion. Although this is one objective fact which tends to indicate appellant's subjective intent to commit acts other than theft, it is not sufficiently strong to preclude a jury finding that the original intent had been to steal. Indeed there was no showing that before the entry appellant was aware of the girl's presence in the house. Appellant offered no evidence tending to suggest that the accused lacked motive for theft. In the absence of some such evidence the verdict cannot be disturbed.

105 U.S.App.D.C. at 61, 263 F.2d at 745. Thus, the attempt by the majority to distinguish *Washington* is also futile.

Were this the only evidence—that appellant had broken into and entered this house in the nighttime and offered no explanation for his presence, *Cady* and *Washington* would both require affirmance. Yet the majority opinion fails to mention additional evidence which supports the jury's conclusion that appellant had an intent to steal and which makes affirmance all the more compelling. The record establishes that there was evidence of (1) a forcible entry, (2) an attempt to gain further access into the interior of the house, (3) disturbance of various personal property in the sun room, (4) concealment of the individual, and finally (5) appellant's suggestion that he resisted arrest was not negated. Any one of these acts is evidence of criminal intent sufficient to support a finding of intent to steal. However, the majority would have it believed that appellant's presence in this house was wholly innocent, subtly suggesting that he was merely attempting to get out of the cold and went to sleep on Mrs. Vessels' floor. These are mere assertions and have no factual support in the evidence. Thus, the majority notes only that Mrs. Vessels noticed that the sun room window had been opened, but fails to add that closer inspection revealed that the lock had been broken because it had been pried open.[27] The majority attempts to negate any concealment by appellant by describing his position as "lying on the floor" when found by the police, suggesting appellant was only resting. Yet, there is *no* evidence that he was "lying." The evidence is that he was "on the floor by the window." [28]

The majority further attempts to support its interpretation of the innocent nature of appellant's forcible midnight entry by noting that he failed to attack Mrs. Vessels when she discovered his presence. The record, however, indicates that Mrs. Vessels never directly saw appellant, but only suspected he was still in the sun room [29] and the plywood which had been knocked over when appellant attempted to open the French doors presented some obstacle to easy entry from the sun room to the dining room.[30] Further, it finds significantly exculpatory the fact that appellant did not escape during the several minutes between discovery of his presence and his apprehension, even though there was an open window nearby. There is no evidence that appellant could have escaped had he attempted to do so. The policemen were undoubtedly armed and with armed policemen in close proximity, an open window is no guarantee of escape —so a refusal to attempt to so escape is not any indication of the absence of criminal intent. The point the majority opinion attempts to make in this respect is merely another example of where it is straining at gnats and thus indicating the weakness of its entire conclusion.

---

27. Tr. 19, 28.

28. Tr. 29. This was the testimony by the arresting officer and the only sworn testimony of the subject. The prosecutor in opening argument said he was "down in the corner, hunched down" (Tr. 10). Appellant's trial counsel in opening argument stated he was "down on all fours" (Tr. 15).

29. Tr. 20.

30. Tr. 24.

After the awakening crash of the falling plywood, Mrs. Vessels "immediately got up" and went downstairs, saw the disturbed panelling, and "immediately kept [*sic*] out of the front door." [31] She walked to the side of the house noticing the open window to the sun room, walked to the back of the house and saw the cut screen door, and then "immediately went around and knocked on [her] neighbors [*sic*] door [10 feet across the driveway] and asked him to call the police." [32] Thus, her presence near the window could have forestalled his escape for some period of time and the police arrived within two or five minutes.[33] Rather than inferring innocence from appellant's failure to escape during this period, it would certainly be reasonable for the jury to conclude that his apprehension took place with such alacrity that he had no time to make his escape. And his position on the floor by the window when apprehended suggests not only concealment, but preparedness to make that escape if an opportunity presented itself.

In this general discussion it should also be noted that the facts were such that the jury could have concluded that he was attempting to "conceal" himself by the open window through which he had gained entry into the house by breaking the lock. To argue, as the majority opinion does that "He could not have been concealed, since the arresting officers saw him immediately upon peering through the door into the sunroom . . . ." [34] attempts to embellish the cold facts. The reason he was discovered so quickly was because Mrs. Vessels told the police officers where she thought he was and he was trapped between the French doors which were difficult to negotiate because of the fallen plywood, and the open window only led outside where Mrs. Vessels might see him. By being on the floor next to the wall under the window, the jury would be justified in inferring that he was attempting concealment—so the fact is that he tried to conceal himself, but the physical layout of the sun room prohibited him from effectively concealing himself. To my knowledge it has never before been suggested that an inability to conceal oneself or to escape is a defense to the crime of housebreaking.

It should also be noted that appellant had not been stationary in the room, as the majority implies. He had attempted to gain access to the dining room, he had disturbed a number of articles in the sun room, and he had finally moved back on the floor below the window he had entered. All this activity proves he was not just seeking sanctuary from the "pleasant night" in January.[35]

Finally, the unsupported statement by the majority "that nothing of value in the house had been moved so as to indicate an attempt to steal" merits further discussion. While the record does not disclose the value of the personal property in the sun room, Mrs. Vessels testified that upon inspecting that room she discovered that a clock had been broken, and a lamp, some paintings in frames, and some pieces of "gill" had been disturbed.[36] As mentioned previously, the record is unclear whether these items were disturbed by appellant before his arrest, or whether this occurred during his arrest. If before his arrest, the jury could have concluded that appellant was rummaging around for something to steal. If they were disturbed during his arrest, then the jury might well have reasoned that appellant was resisting his arrest. Either interpretation supports a conclusion by the jury that appellant possessed criminal intent from which an intent to steal could be inferred.

What has happened here is that not only has the majority misread controlling precedent in this circuit and the

---

31. Tr. 17–18.

32. Tr. 18–19.

33. Tr. 19, 27.

34. Majority opinion, p. 48.

35. Tr. 22.

36. Tr. 23.

general law of the land on the subject, but it has taken a defendant-slanted selective view of the evidence to support reversal, when the law requires that the evidence should be viewed in the light most favorable to the jury's verdict. To do otherwise, and particularly to state facts which have no support in the transcript, is to violate one of the best established rules of appellate procedure.

There are many other aspects of the majority opinion which should be very disturbing to those interested in the proper administration of justice. First of all, the majority refuses to find the appellant guilty of unlawful entry [37] on the ground that no such lesser charge was submitted to the jury. Under such circumstances the law in this circuit does not require such a result. Assuming the evidence was deficient to support an intent to steal, on the facts presented we could direct that the District Court enter a judgment of guilty of unlawful entry.[38] And to add insult to injury appellant's counsel had stated to the jury that his client was "guilty of unlawful entry." [39] Moreover, he was unquestionably guilty of forcible entry,[40] which is a greater offense.

The effect upon appellant is also destructive of justice. He needs incarceration as his counsel said at sentencing:

*This is a man, to me, who is apparently heading to a road of suicide, itself.* He's not a men [sic] fately bent on mischief, or trying to prey on society. He's his own worse [sic] enemy. He's a person who is being hurt himself by what he does; nobody else.

I don't know what to suggest to the Court with respect to sentence. I'd leave that to the Court's wisdom.[41]

This is in effect a plea for an appropriate sentence to incarcerate and thereby help appellant. Appellant himself said, *inter alia:*

During my 20 years in association with narcotics, I've never—I've deliberately refrained from committing crimes of violence and when I used drugs, *I get involved in petit larcenies.*[42]

The italicized portion of the statement corroborates the soundness of the logic that permits a jury to infer that the intent of a nighttime prowler, the other statutory factors being present, is to steal.

The trial judge showed great compassion and adjudged a very considerate sentence of "one to five years" with a recommendation that it be served in "the Federal institution at Lewisburg where they have a program which may

---

37. Majority opinion, p. 49.

38. In Austin v. United States, 127 U.S. App.D.C. 180, 382 F.2d 129 (1967), we construed 28 U.S.C. § 2106 (1970) as authorizing federal appellate courts to modify a criminal judgment to reduce the conviction to that of a lesser included offense, in situations where the evidence failed to support one element of the crime for which appellant was charged and convicted but sufficiently sustained all the elements of the included offense. This procedure has been subsequently followed in a number of cases. *See, e. g.,* United States v. Thomas, 144 U.S.App.D.C. 44, 444 F.2d 919 (1971); United States v. Bryant, 137 U.S.App.D.C. 124, 420 F.2d 1327 (1969); Allison v. United States, 133 U.S.App.D.C. 159, 409 F.2d 445 (1969); Hemphill v. United States, 131 U.S.App.D.C. 46, 402 F.2d 187 (1968).

39. Tr. 11.

40. D.C.Code § 22–3101 provides:
    Whoever shall forcibly enter upon any premises, or having entered without force, shall unlawfully detain the same by force against any person previously in the peaceable possession of the same and claiming right thereto, shall be punished by imprisonment for not more than one year or a fine of not more than one hundred dollars, or both. (Mar. 3, 1901, 31 Stat. 1327, ch. 854, § 851.)

41. Tr. 82 (emphasis added).

42. Tr. 83 (emphasis added). This statement is a practical admission in this case that the inference of intent to steal available to the jury from the nighttime breaking and entering is precisely applicable to appellant in this case.

be helpful to you in connection with your narcotic problem." [43]

For the majority of this panel to take this convicted burglar with a 20-year narcotics problem who has a self-admitted compulsion to commit larceny when he is using drugs and, contrary to all the law for over a century, turn him loose to prowl and prey further upon the citizens of the District of Columbia is in my considered opinion worse than the offense the appellant committed. Probably the greatest disservice performed by the majority is to appellant himself who practically admitted his guilt and it is significant that his counsel never opposed incarceration but in effect asked the court to help this man "who is apparently heading to a road of suicide, itself." There was no other practical sentence than the one the court adjudged, he having previously served much time in jail, principally for larceny.[44] Of all the sad cases that have gone through our court, turning this man loose, under such circumstances, is the saddest and one of the most gross miscarriages of justice that I have encountered.

One final point, while the panel opinion has incorrectly stated material facts which even under its own statement of the law would require affirmance, more vitally, the panel has not applied the decisional law of this circuit, as explained above. The only proper way the result reached by this panel can be reached in this circuit is for an *en banc* court to reverse all the prior law in this circuit on the subject. So, unless the same result is reached by an *en banc* court, the majority opinion will not be entitled to any precedential value in this circuit because it is in conflict with the previously established law in this circuit. It can also be added that the majority opinion is contrary to the general law in the United States. In fact, a diligent search of the case law has not turned up any case in the history of the United States where a burglary conviction was reversed under the circumstances which exist here.

On Appellee's Petition for Rehearing and/or Suggestion for Rehearing En Banc

Before: BAZELON, Chief Judge; and WRIGHT and MacKINNON, Circuit Judges.

ORDER

On consideration of the petition of the United States for rehearing and its suggestion for rehearing en banc, it is ordered by the Court that the petition for rehearing is granted for the limited purpose of modifying the Court's original opinion and judgment by amending Part IV of the opinion to read as follows:

▉▉▉ Appellant's burglary conviction is reversed. However, in convicting appellant of burglary, the jury necessarily found the facts required for conviction of the lesser included offense of unlawful entry, and there is no question that the evidence was sufficient to support this determination. We therefore exercise our power under 28 U.S.C. § 2106 (1970) to remand the case with instructions either to enter, if the Government consents, a judgment of conviction of unlawful entry or, if the court believes it in the interest of justice, to grant a new trial on the lesser offense.[9]

Under the statute the offense of burglary does not include an element of "breaking" or force; the offense of forcible entry, of course, does.[10] Hence, the jury's verdict against Melton on the burglary charge cannot be taken as indicating that it found all elements necessary to conclude that he had committed forcible entry. We cannot, therefore, properly authorize on remand a judgment of conviction of forcible en-

43. Tr. 83.

44. Tr. 81.

9. See Austin v. United States, 127 U.S.App. D.C. 180, 382 F.2d 129 (1967).

10. 22 D.C.Code § 3101 (Supp. V 1972).

try, even though evidence was presented at trial from which a jury might have concluded that Melton had indeed committed that offense. It remains open to the Government, however, to decline the unlawful entry conviction, and to seek instead to indict and prosecute Melton for forcible entry.

Reversed and Remanded.

Per Curiam.

MacKINNON, Circuit Judge, dissenting:

My vote is cast for rehearing *en banc*. A majority of the court—for differently stated reasons [1] has denied the suggestion of the United States for rehearing *en banc*. On rehearing the panel has improved its original disposition which would have completely reversed the conviction and freed appellant of all offenses. But the alteration in the disposition of this case will not correct the major decisional error in the majority opinion nor will it respond adequately to appellant's cry for help in his pitiful situation. Under the statute the maximum period of incarceration for unlawful entry is *six* months [2] and good time allowances could reduce that period of confinement.[3] Obviously that short period of incarceration cannot sufficiently help appellant to correct his deeply ingrained drug habit which requires a change in his nature. So the majority of the panel apply an inadequate remedy to the prob-

lems of the accused and the public can look forward to an early resumption of his predatory behavior. What good is all our supposed intelligence, culture and wealth if we refuse to use them in a common sense way and the perils of the street continue?

In reaching such conclusion the panel majority also continue in their failure to properly apply the burglary law of this nation to the facts of this case. The details of this most egregious error are set forth in my original dissenting opinion. In this aspect of the opinion, the majority decision as to the applicable law is so extreme and so far removed from established law as to place the action of the court as a practical matter beyond the bounds of judicial decision and bring it into what is legislative action beyond the prerogatives of the court whose jurisdiction and authority is limited to "judicial power." This is another instance, of which this court has a tendency to furnish too many examples, where the majority are avoiding long established law and precedents in an attempt to embark the law enforcement agencies of this jurisdiction upon uncharted seas with an uncertain compass and the proper administration of justice becomes uncertain and doubtful. The majority should recognize that the public has some rights too, as well as the accused, in the proper execution of the criminal laws.

---

1. I do not believe that we should decline to *en banc* a criminal case to correct a decision involving an important legal question arising under the Criminal Code of the District of Columbia on the ground that this court recently has been divested of much of its jurisdiction in such matters. If the decision is wrong we should correct it and not let it stand for others to consider it as a decision concurred in by this full court.

2. D.C.Code § 22–3102 (1973) provides:
   Any person who, without lawful authority, shall enter, or attempt to enter, any public or private dwelling, building or other property, or part of such dwelling, building or other property, against the will of the

lawful occcupant or of the person lawfully in charge thereof, or being therein or thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $100 or imprisonment in the jail for not more than six months, or both, in the discretion of the court. Mar. 3, 1901, ch. 854, § 824, 31 Stat. 1324; Mar. 4, 1935, ch. 23, 49 Stat. 37; July 17, 1952, ch. 941, § 1, 66 Stat. 766.

3. D.C.Code § 24–405 (1973).