66 So.2d 753

#### WILLIS v. STATE.

#### 6 Div. 568.

Court of Appeals of Alabama.

April 21, 1953.

Rehearing Denied May 19, 1953.

Ray & Giles, Birmingham, for appellant.

Si Garrett, Atty. Gen., and Maury D. Smith, Asst. Atty. Gen., for the State.

CARR, Presiding Judge.

The indictment in this case charges the accused, Lessie Willis, with unlawfully attempting to poison her husband, Robert E. Willis, by administering to him quantities of arsenic. Title 14, Sec. 38, Code 1940.

The trial resulted in a conviction as charged.

The persons indicated were married January 2, 1951, and lived together as man and wife until February 10, 1952. Only the couple occupied the home during this time.

On February 13, 1952, Robert Willis was admitted to the hospital. He had been ill for some time prior thereto and confined to his bed for about seven days just before going to the hospital.

According to the testimony of this witness, only his wife attended to his needs during his illness. She gave him medicines of various kinds and served him food and nourishment.

He detected that his coffee at one time had a peculiar taste and a dosage of Sal Hepatica did not appear to be normal.

Dr. Arthur Owens treated the patient at the hospital and diagnosed his malady: "Arsenic poisoning."

Dr. Brooks, a state toxicologist, examined specimens of Mr. Willis' finger nails and urine. The witness testified: "I found relative large quantities of arsenic, numerically to the extent of two-tenths of a milligram of arsenic per gram of finger nail clippings. * * * I found that this urine contained arsenic to the extent of one three-tenths milligrams of arsenic per liter."

The witness stated also that there were visible physical impairments and appearances which indicated to him that the illness was due to arsenic poisoning.

Appellant was arrested and imprisoned in the county jail on February 17, 1952. After the arrest the family physician and a deputy sheriff went to the residence which had been occupied by Mr. and Mrs. Willis. Pertinent to this review, they found some stewed tomatoes in the refrigerator and two bottles labeled: "Kellogg's Ant Paste. Rattle Cap. Poison." One of these was empty and the other about one-half full. The bottles were discovered at a trash dumping place about sixty or seventy feet to the rear of the dwelling.

Dr. Brooks testified that the tomatoes contained a small quantity of arsenic and that the contents of the half filled bottle approximated four percent metallic arsenic by weight.

According to the State's evidence, following her arrest, the accused admitted to officers that during a period of about forty-five days, from time to time, she had given her husband portions of the ant poison.

She was also questioned at length by the deputy solicitor. The questions and answers were taken down and transcribed by a court reporter. In this interview she also admitted that she administered the poison in small dose quantities several times just prior to her arrest.

As a witness in her own behalf the defendant denied that she ever gave her husband any of the poison and answered that on account of illness and nervousness she had no recollection of making either the oral or written statement indicated herein above.

■ The State was permitted to introduce evidence relating to the value of Mr. Willis' property and the income therefrom. This proof was pertinent and admissible as having a tendency to establish motive. Spicer v. State, 188 Ala. 9, 65 So. 972.

With commendable candor appellant's attorney concedes in brief that this character of evidence was properly allowed.

■ Appellant sought to prove that during the time she was living with Mr. Willis

the latter was treated at the hospital for alcoholism and while in this condition he was mentally deranged. She attempted also to show that her husband threatened and assaulted her, particularly when he was drinking.

In oral argument and in brief, appellant's able attorney advances a rather unique theory in support of his insistence that his client should have been permitted to make this proof. He writes in part:

"In the case at bar, the man and women (sic) in the case met under unique circumstances; and in the case at bar, the man and women (sic) parted company under circumstances no less unusual. Due to this fact, the State looked about for a motive and were (sic) permitted to produce evidence tending to disclose a motive on the part of appellant to poison her husband. In the mix-up, the appellant also sought to show motive on the part of her husband which influenced his action in this case. For some strange reason, the Court favored the husband by following the rule laid down in the books, but denied the wife the privilege of using the same rule laid down in the same books."

The husband, of course, is not charged with crime, and any proof of motive on his part would not be pertinent to the factual issues.

In her testimony the defendant anchors her defense on denial that she ever gave her husband any poison.

The fact that her husband was an alcoholic and cruel to her would not afford legal excuse or justification for the offense charged in the indictment.

The court sustained the State's objections to appellant's attempt to prove that, prior to the trial date, Mr. Willis filed a bill in court praying for a divorce and a restraining order seeking to tie up respondent's bank account.

■ Assuming, but not deciding, that this inquiry was material as tending to show bias, interest, or prejudice on the part of a State's witness, we hold that counsel did not follow the proper procedure in attempting to make the proof. The questions relating to the matter were first addressed to the appellant. Prior to this time Mr. Willis had not been interrogated concerning his state of feeling toward the defendant. He should have been given this opportunity on cross-examination. If he had disavowed any hostility, the privilege would then have been opened to the appellant to resort to proof of circumstances which would have tended to show the contrary.

This rule of procedure is discussed in authorities cited under ☞372(3) and 373, 19 Ala.Digest, Witnesses.

On cross-examination the defendant again asserted that she did not remember appearing before the deputy solicitor for questioning. Following this declaration the prosecuting officer made specific inquiry of her concerning the contents of the written statement. In this aspect, he would read to the witness a question and answer and then ask if she made the recorded reply. This method of examination was pursued until a number of the questions and answers were covered. The appellant replied in each instance that she did not remember.

In rebuttal the State introduced the court reporter who took and transcribed the statement. The solicitor confined his questioning to that portion of the written statement which the appellant on cross-examination claimed she did not remember.

The reporter testified, in respect to each reply, that the accused did, in fact, make the answers as he recorded them.

Appellant's attorney then introduced in evidence the written statement in its entirety.

It is urged that the court was in error in overruling appellant's objections to the questions propounded to the court reporter. The insistence is made that it was not in rebuttal.

Of course, the statement could have been introduced by the State as a confession. In this event it should have been tendered before the prosecution rested.

■ This omission did not preclude its use for impeachment purposes. In the latter aspect the procedure conformed to the rule.

■ The assertion by the appellant that she did not remember making the prior statement was equivalent for impeachment predicate to a denial that she made it. Lawson v. State, Ala.App., 57 So.2d 643 [1]; Hall v. State, 19 Ala.App. 229, 96 So. 644; Raines v. State, 147 Ala. 691, 40 So. 932; Weaver v. State, 33 Ala.App. 207, 31 So.2d 593; Green v. State, 233 Ala. 349, 171 So. 643; Bigham v. State, 203 Ala. 162, 82 So. 192.

We hold that it was not error to permit the State to introduce in evidence the two bottles described herein above.

■ To a great extent the prosecution relied on circumstantial evidence for a conviction. When this is attempted, very wide latitude is given in the matter of making the proof.

■ The articles in question were found not a very great distance from appellant's residence and at a place where it could be reasonably expected she would discard them. The bottles contained an arsenic poison. One of the containers was about one-half full. Ordinarily this bottle would not have been discarded in the usual course of practice.

The following authorities support our view of the admissibility of the exhibits of instant concern: Snead v. State, 251 Ala. 624, 38 So.2d 576; James v. State, 17 Ala. App. 490, 86 So. 131; Whittle v. State, 213 Ala. 301, 104 So. 668; Anderson v. State, 209 Ala. 36, 95 So. 171; Patton v. State, 246 Ala. 639, 21 So.2d 844; Kyzer v. State, 250 Ala. 279, 33 So.2d 885.

■ We would be out of harmony with the familiar authorities to hold that the verdict of the jury was contrary to the weight of the evidence.

We have attempted to give due consideration to each question presented for our review. Those we have not discussed relate to elementary principles of law.

The judgment below is ordered affirmed.

Affirmed.