268 So.2d 47

Billy L. HAYNES

v.

STATE.
3 Div. 130.

Court of Criminal Appeals of Alabama.

Oct. 17, 1972.

Elno A. Smith, Jr., Montgomery, for appellant.

William J. Baxley, Atty. Gen. and Samuel L. Adams, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of burglary in the second degree by a jury in the Circuit Court of Montgomery County and sentenced to a term of three years in the penitentiary.

Omitting the formal parts, the indictment charged:

"The Grand Jury of said County charge that, before the findings of this indictment, Billy L. Haynes, alias Billy Lamon Haynes, alias Billy Haynes, alias T. E. Jones, alias Billy Lamond Haynes, alias Billy Laymond Haynes, alias William Laymond Haynes, alias William Laymon Haynes, alias Billy Laymon Haynes, alias Billy Laymon Haynes, alias Billy Layman Haynes, whose name is to the Grand Jury otherwise unknown, with intent to steal, broke into and entered the shop, store or warehouse of Alabama Machinery and Supply Co., a corporation, in which goods, wares, merchandise or things of value were kept for use, sale or deposit, against the peace and dignity of the State of Alabama."

Appellant was represented in the court below by counsel of his own choice. After conviction, he sought and obtained a free transcript and his trial attorney was appointed to represent him on appeal.

On March 8, 1971, the burglar alarm system at the Alabama Machinery and Supply Company, Inc., sounded. The system is geared to an answering service which in turn contacts the Montgomery Police Department and also a representative of the store, who, in this instance was the president of the corporation, Mr. F. G. Reinehr. When Mr. Reinehr arrived, he found two police cruisers in front of the building and the officers were waiting for him on the sidewalk. The time was close to midnight. He immediately noticed a damaged plate glass window and looking through the broken window, he observed a cobble-stone on the inside of the store. The street in front of the store was being repaired that day and there were a stack of cobble-stones about ten feet from the front store entrance. According to his testimony, he unlocked the front door to the store and entered the building with two or three policemen and they searched the first floor of the building but did not discover anyone. One of the officers stayed with Mr. Reinehr at the counter, which was approximately twenty-five feet from the front door. They closed the door after they entered the store. After the search downstairs, Mr. Reinehr got on the elevator and went to another floor to get a piece of plywood to cover the hole in the window. While they were standing around the counter, they heard a noise in the back of the store and noticed a shadowy figure approaching from the rear of the building and when he got closer to the counter, Mr. Reinehr recognized appellant, who at that time worked for Fowler-Dozier Tire Company across the street. One of the officers asked Mr. Reinehr if this man had permission to be in the building and he said that he did not have permission. As appellant approached the officers and Mr. Reinehr, he stated that he had seen the police around the building and he just strolled in to see what was going on. When it was learned that appellant was not supposed to be in the building, he was placed under arrest.

According to the testimony of the officers, no one entered the building through the front door after they went in with Mr. Reinehr. Several police officers remained on the sidewalk in front of the building during the search on the inside. There was testimony to the effect that the hole in the window was large enough for a man to crawl through.

Appellant contends that there was a fatal variance between the allegation in the indictment as to the ownership of the building and the proof. The indictment alleges that " * * * with intent to steal, broke into and entered the shop, store or warehouse of Alabama Machinery and Supply Co., a corporation, * * *", whereas, the proof shows the correct name to be "Alabama Machinery and Supply Company Inc.". In Irvin v. State, 44 Ala.App. 101, 203 So.2d 283, the Court of Appeals said:

"'Inc.' connotes a corporation. Thus, in Indian Refining Co. v. Royal Oil Co., 102 Cal.App. 710, 283 P. 856, we find:

"'* * * it has been held that the abbreviation "Inc.," means "incorporated," and is equivalent to "(a corporation.)" Goldberg, Bowen & Co. v. Dimick, 169 Cal. 187, 146 P. 672. On the same reasoning, the words "Indian Refining Co., Inc.," as used in the complaint herein, are equivalent to "Indian Refining Company (a corporation.)" * * *'"

Mr. Reinehr testified that at the time of the burglary there were thirty-five thousand items in the store and it was impossible to determine if anything had been taken. To constitute burglary, it is not necessary that a theft be committed. Waid v. State, 39 Ala.App. 255, 97 So.2d 598.

The gravamen of the offense is breaking and entering with intent to steal or commit a felony. Wicks v. State, 44 Ala. 398. It must be conceded there was a "breaking" in the instant case. Appellant was found in the building and according to the testimony he was there without authority. In Behel v. State, 40 Ala.App. 689, 122 So.2d 537, it is said:

"The jury may reasonably infer intent to steal from the mere presence of the accused in the shop in circumstances showing a breaking and entering in the night. 12 C.J.S. Burglary § 55; 9 Am.Jur., Burglary, § 26; 2 Wharton's Crim.Law

& Proc., § 408; Settle v. State, 26 Ala. App. 287, 158 So. 775; Dufresne v. State, 40 Ala.App. 476, 116 So.2d 385; Ex parte Seyfried, 74 Idaho 467, 264 P. 2d 685; State v. Johnson, 77 Idaho 1, 287 P.2d 425, 51 A.L.R.2d 1386; Commonwealth v. Ronchetti, 333 Mass. 78, 128 N.E.2d 334; Washington v. United States, 105 U.S.App.D.C. 58, 263 F.2d 742."

The question of the defendant's intent is one for the jury, to be determined upon a consideration of all the evidence. Adair v. State, 19 Ala.App. 174, 95 So. 827; Cox v. State, 33 Ala.App. 395, 34 So.2d 179.

The jury simply did not buy appellant's explanation made to the police officers inside the building that "he had seen the police come over and he just strolled in to see what was going on."

No reversible error is found in the record and this case is due to be affirmed.

Affirmed.

CATES, P. J., and ALMON, TYSON and DeCARLO, JJ., concur.