301 So.2d 267

**Charles Eugene CREEL**

v.

**STATE.**

**6 Div. 589.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1974.

W. Mark Anderson, III, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and John S. Andrews, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of burglary in the second degree and sentenced to a term of two years in the penitentiary. He was represented at arraignment and trial by court-appointed counsel. He was furnished a free transcript and trial counsel was appointed to represent him on appeal. The appointed attorney having failed to file a brief, this court appointed a lawyer to represent him and he filed briefs in this court on August 30, 1974.

Sometime on the night of June 5, 1971, or the early morning hours of June 6, Sparks Hardware and Paint Company located in Pratt City, Jefferson County, was broken into by cutting a hole in the roof of the building large enough for the body of a good-sized man to enter. The ceiling directly under the hole in the roof was knocked out and the hole in the ceiling was larger than the one in the roof.

Around 1:30 A.M. on June 6, 1971, two Birmingham Police officers were on routine patrol on the street on which the hardware store was located. As they approached the store they saw a man with a crowbar in the act of prizing off the padlock on the front door of the store building on which the roof had been cut. When the man saw the patrol car he threw the crowbar on the ground and started running away from the store. As he was running the officers saw him pull off some gloves and throw them down. The officers overtook the man and placed him under arrest. They searched him for weapons, handcuffed him and put him in the back seat of the patrol car. The officers picked up the pair of gloves and the crowbar and put them in the car. Then one of the officers went back to check the building. He found the front door was secured by a lock on the inside that required a key to open it. He walked around the building and de-

termined the building had not been entered from the ground level.

The officers carried the suspect to the precinct station at Ensley and on the way one of the officers read him the *Miranda* rights from a card after which he was asked if he understood his rights. The suspect replied, "Save all that —— for my lawyer, he will be in touch with you." Just before reaching the station house the suspect said, "You all think you are smart ——, you let my partner and my car get away." After reaching the station house the suspect was searched for identification and the officers found a slip of paper from City Hall issued to Edward Steve Johnson, dated June 5, 1971, authorizing him to get a 1963 Plymouth automobile, bearing tag number 1B50621 from Kemp's Garage where it had been impounded while Johnson was in jail charged with possession of burglary tools.

In the light of Johnson's statement to the officers that they had let his partner and car get away they thought he might be telling the truth. They put Johnson in a cell and immediately returned to Sparks Hardware store. As they drove by the store they saw a 1963 Plymouth automobile driving down the street. The driver was the only occupant of this car. The officers turned around and started following this car. They got close enough to see the tag number and found it to be the same number —1B50621—on the paper to Kemp's Garage that the officers had removed from Johnson's pocket at the station house. They turned on the blue light and siren and the driver of the Plymouth speeded away. The officers gave chase at speeds from 50 to 75 miles per hour. Twenty blocks later the chase ended. Appellant was the driver of the fleeing car. He was arrested and searched. The officers found a bill of sale to the Plymouth in the name of Edward Steve Johnson in appellant's clothing. They also found a pocket knife with a broken blade that had the appearance of tar on it.

The officers looked in the back seat of the Plymouth and in plain view they saw a number of tools including a pick, crowbar, ax, handsaw (it was a file-type saw used to cut metal), three bits, and a manual type brace with a bit in place. The drill bit had the appearance of tar on it. They also observed a pair of gloves on the back floor board, and there were some radios, clocks, aftershave lotions, and other toilet articles. They key to the trunk of the automobile was in the lock when the officers stopped the car. The officers opened the trunk and found more of the same type tools.

At the time appellant was arrested he had on a long pair of pants and a T-shirt. His hair was tousled and had the appearance of tar in it. He was wet with perspiration. He had tar-looking material on his arms and up and down his pants.

After appellant was safely in jail the officers returned to the hardware store and climbed on the roof without the aid of a ladder. They observed the hole in the roof and called Mr. Sparks to come to the store. Mr. Sparks arrived and opened the front door with a key and he and the officers entered the building. They found debris on the floor and on the counter underneath the hole in the metal ceiling. He inspected the contents of his store and did not find anything missing. He checked all doors and found them locked and he went home.

The next morning Mr. Sparks opened his store and again observed the hole in the metal ceiling and he testified he could see daylight through the roof of his store building. He and one of his employees went on top of the building and repaired the hole in the roof with lumber and roll roofing of the same type roofing that was on the building before it was cut. They also repaired the hole in the metal ceiling.

Appellant's clothing was removed and sent to the Department of Toxicology along with the knife taken from his person and the drill bit with the tar-like substance on it. A piece of the tar roofing and oth-

er substances from the roof of the store were also sent to the toxicologist for examination and comparison.

The toxicologist qualified as an expert and testified that the rusty-looking dust or dirt removed from the cuffs of the trousers and smears on the clothing appellant was wearing when he was arrested matched the known rust or rust-like dirt taken from the roof of Sparks Hardware and Paint Company. He further said the black smears on the T-shirt and pants were identified as tar.

A first cousin of appellant testified that he employed him to paint his house and repair a leak but he could not swear that appellant ever went on the roof of his house to do any work except to paint the eaves of the house. He said appellant worked on his house off and on for six weeks prior to his arrest and some after he was arrested. He had a composition roof. He further testified that he paid appellant six or seven hundred dollars but he could not remember if he paid him during the week prior to his arrest. He paid appellant in cash and could not remember when he last paid him and could not say he ever paid him by check.

Appellant testified and denied any involvement in the burglary of the hardware store. He explained his presence in the Plymouth by saying he was at the Bluebird Truck Stop on the Bessemer Superhighway on the night of the alleged burglary drinking beer with his girlfriend and her brother. He was staying in a rented cabin at the Bluebird with his girlfriend; that shortly after twelve midnight one Pauline Morris came to the Bluebird and had a conversation with him. After this conversation he got into Pauline's car and they rode to Ensley. They found a brown Plymouth automobile parked on Avenue V. He got into the Plymouth and found the key in the switch. He told Pauline he had the key to the car and she drove off in one direction and he in another direction. He said he knew the Plymouth belonged to

Johnson and he was going to drive it to the Bluebird and park it for Johnson to pick up later. He claimed he had driven only four or five blocks when the police officers stopped him and placed him under arrest.

Appellant further testified that he knew Johnson was a burglar and he first met him while they were both in jail in Columbiana, Alabama. He said he did not socialize with Johnson but admitted they went to beer drinking places with their girlfriends. He said Pauline Morris was Johnson's girlfriend but he, appellant, had never dated her.

At the time of the trial in the instant case, appellant was serving a twenty-year sentence in the penitentiary for murder in the second degree.

Johnson testified on behalf of appellant. He denied that appellant was in on the burglary of Sparks Hardware and Paint Company. He stated that his girlfriend, Pauline Morris, followed him in her 1964 Mercury to the hardware store the night of the burglary and parked her car behind his; that Pauline stayed in her car while he went up on the roof and cut the hole. When he came off the roof and put the tools in his car, Pauline told him she could not climb the roof. He then took the crowbar and prized the lock off the front door so that Pauline could go in and help him load up both cars, but just as he broke the lock, the officers drove up; that he threw the crowbar down and started running and while running, he pulled his gloves off and dropped them before the officers caught him.

He further testified that he was released from jail that morning. He carried the bill of sale to his Plymouth to the City Hall and got a slip authorizing him to get his car from Kemp's Garage. He said he got a check from his mother for $65.00 and bought the tools found in his car by the officers; that he bought these tools for the purpose of breaking into the hardware

store and another business establishment next door.

Johnson had previously been convicted of burglary and robbery and was serving time in the penitentiary for one of these offenses at the time he testified at appellant's trial. He had previously pleaded guilty to breaking and entering Sparks Hardware and Paint Company.

Both Johnson and appellant testified that Pauline Morris had been shot and killed by her husband about a year prior to the instant trial.

Appellant urges a reversal in this case on the ground that the state failed to prove one of the elements of second degree burglary, viz., that the store house was actually entered.

■ The applicable elements of burglary in the second degree are: (1) breaking, (2) entering, (3) with intent to steal or commit a felony. Eason v. State, 48 Ala. App. 471, 265 So.2d 913; Haynes v. State, 49 Ala.App. 16, 268 So.2d 47.

It must be conceded that there was a "breaking" in this case. Mr. Sparks testified that he could see daylight through the metal ceiling and on through the roof above.

■ The question of the defendant's intent is one for the jury, to be determined upon a consideration of all the evidence. Adair v. State, 19 Ala.App. 174, 95 So. 827; Cox v. State, 33 Ala.App. 395, 34 So.2d 179.

■ Johnson testified that after cutting the hole in the roof of the building, he got down in the hole and kicked in a section of the metal ceiling with his foot. This was sufficient to constitute the element of "entering". Walker v. State, 63 Ala. 49; Donohoo v. State, 36 Ala. 281; Olds v. State, 97 Ala. 81, 12 So. 409.

The controlling law on cases of this kind has been many times expressed by this court and the Supreme Court of Alabama. We take the following from Stokley v. State, 254 Ala. 534, 49 So.2d 284:

"It is well established that when, by prearrangement or on the spur of the moment, two or more persons enter upon a common enterprise or adventure and a criminal offense is contemplated, then each is a conspirator, and if the purpose is carried out, each is guilty of the offense committed, whether he did any overt act or not. This rests on the principle that one who is present, encouraging, aiding, abetting, or assisting, or who is ready to aid, abet, or assist the other in the perpetration or commission of the offense, is a guilty participant, and in the eye of the law is equally guilty with the one who does the act. Such community of purpose or conspiracy need not be proved by positive testimony. It rarely is so proved. The jury is to determine whether it exists, and the extent of it, from the conduct of the parties and all the testimony in the case. Morris v. State, 146 Ala. 66, 41 So. 274, and cases cited; Jones v. State, 174 Ala. 53, 57 So. 31; Teague v. State, 245 Ala. 339, 16 So.2d 877.

"When two or more persons enter upon an unlawful purpose, with a common intent to aid and encourage each other in anything within their common design, they are each responsible, civilly and criminally, for everything which may consequently and subsequently result from such unlawful purpose, whether specifically contemplated or not. Jones v. State, supra; Jolly v. State [94 Ala. 19, 10 So. 606], supra; Tanner v. State, 92 Ala. 1, 9 So. 613."

See also, Goodman v. State, 52 Ala.App. 265, 291 So.2d 358.

■■ The state relied on circumstantial evidence to convict appellant. Circumstantial evidence is entitled to the same weight

that direct evidence is entitled to provided it points to the guilt of the accused. In cases where the state relies to a great extent on circumstantial evidence for a conviction very wide latitude is allowed in making proof. Cline v. State, 25 Ala.App. 433, 148 So. 172; Willis v. State, 37 Ala. App. 185, 66 So.2d 753; Sumeral v. State, 39 Ala.App. 638, 106 So.2d 270.

The web of circumstances which enshrouds appellant includes the following: (1) He was apprehended near the scene of the burglary in an automobile full of burglary tools; (2) He tried to out run the police officers at high speeds; (3) A pocket knife in his possession had tar on it; (4) A drill bit in the car driven by him also had tar on it; (5) He had tar on his arms, in his hair, and on the cuff of his pants; (6) The tar on his pants matched samples of the roof on top of the store that was cut to gain entrance into the building; (7) When arrested he was in possession of the bill of sale to Johnson's car and Johnson was caught in the act of prizing the lock off the front door of the store building a short time before; (8) The officers did not see another automobile when Johnson was arrested.

Where there is a reasonable inference to prove the existence of the corpus delicti, the court should submit to the jury for its consideration the question of the sufficiency and weight of the evidence tending to support that inference. Hines v. State, 260 Ala. 668, 72 So.2d 296; Haggler v. State, 49 Ala.App. 259, 270 So.2d 690; Felton v. State, 47 Ala.App. 182, 252 So.2d 108.

To constitute the offense of burglary, it is not necessary to prove that a theft was committed. Haynes v. State, 49 Ala. App. 16, 268 So.2d 47.

We find no reversible error in the record and the case is affirmed.

Affirmed.

All the Judges concur.