Appellants were separately indicted for murder in the first degree involving the death of James Daniel Broughton, Jr. The families of both appellants employed the same lawyer to represent them. By agreement of defense counsel and the District Attorney, with the approval of the trial court, appellants were tried jointly. Both appellants individually consented to be tried jointly. When they were separately arraigned, each entered a plea of not guilty. The jury returned separate verdicts finding appellants guilty of murder in the first degree and fixed their punishment at life imprisonment in the penitentiary. The trial judge separately adjudged appellants guilty in accordance with the verdicts of the jury and separately sentenced each appellant to life imprisonment.
After the sentences were imposed, appellants gave notice of appeal and the Court found them to be indigent, and ordered a free transcript for them. Trial counsel was appointed to represent the appellants on appeal, but no brief was filed in this Court in their behalf. This Court appointed counsel to represent appellants on this appeal and he filed a brief.
This case is in large measure circumstantial and was submitted to the jury on the State's evidence only. Appellants did not testify and offered no testimony in their behalf. We will recite so much of the State's evidence which we deem sufficient to dispose of the issues presented by the record.
Wilson Beasley, Jr., testified that his father owned and operated Beasley's Food Store located in Bay Minette, Alabama, and that he worked in the store for his father on July 11, 1975. He said the deceased also worked in the store and that he sent the deceased to the bank to cash checks totaling $2,971.68 so that they could *Page 162 
operate the store that afternoon. That the deceased left the store with the checks at approximately 2:15 p.m. and that he did not see him again after he left the store.
On cross-examination he was asked if he had ever seen either of the defendants then on trial and he stated that they were the first two people in the store on the morning of July 11, 1975.
Thelma Robinson testified that on July 11, 1975, she was employed by the Baldwin County Bank which was about two blocks from Beasley's Grocery Store. That the bank closed at 2:30 p.m. and at approximately ten minutes before closing time, she cashed a number of checks for the deceased. She could not give the exact amount but thought the total amount was $2,963.00 and that the denominations of the bills she gave him were all twenties except $3.00.
Kenneth E. Hall, a policeman for the City of Bay Minette, stated that he took part in the search for James Daniel Broughton, Jr., and found him at 8:31 o'clock on the night of July 11, 1975, in the rear seat of a 1969 yellow Ford station wagon on the dirt section of Newport Parkway east of Brownwood Avenue. He said the car was just outside the City limits but within the police jurisdiction of Bay Minette and that he was the first officer to reach the scene. That the Ford station wagon belonged to Mr. Beasley, the owner of the grocery store where the deceased worked, and it was partially in the ditch on the wrong side of the road.
He further testified that the deceased was slumped down in the back seat on the driver's side and he could see blood coming from the back area of his head. That he felt his neck and there was no sign of life. That he had his backup Deputy help him secure the scene and he stayed at the scene, while the other officer went to call the Toxicologist. The Toxicologist, James L. Small, who was stationed in Mobile, arrived at the scene between 9 and 10 o'clock that same night. Officer Hall did not let anyone, including other officers, go near the station wagon until Mr. Small arrived. Mr. Small directed Officer Hall to take plaster casts of footprints around the vehicle. He found two footprints and made plaster casts of both of them. One was approximately two feet from the rear bumper of the car and the other print was about ten feet from the vehicle in a sandy area pointing in a southerly direction.
After the Toxicologist finished his work in and around the station wagon, Officer Hall called for a wrecker and followed the vehicle as it was towed to Still Motor Company in Bay Minette and it was put in the body shop to secure it and both the vehicle and shop were locked. This witness identified two casts introduced in evidence as the casts he made at the scene.
Mr. Small performed an autopsy on the body of the deceased and formed a medical opinion that the cause of death was the result of shock and hemorrhage from multiple gunshot wounds to the body and head caused by .22 caliber and larger caliber bullets. Two .45 caliber hulls were found in the station wagon and a spent .45 caliber bullet was found beneath the vehicle. A .45 caliber bullet was found imbedded in the rear seat where the body was found. He identified a .45 caliber automatic which was later delivered to him by Officer Robert Stewart, Chief Investigator of the Sheriff's Department of Baldwin County, and testified that he ran a ballistics test on the pistol, the hulls and bullets and determined they had been fired from the same .45 automatic pistol. He also identified a pair of shoes which made the print testified to by Officer Hall. The hulls and spent rounds were introduced into evidence as State's Exhibits 6, 7, and 9.
In performing the autopsy Mr. Small recovered three .22 caliber bullets from the head of the deceased. He found another *Page 163 
wound which was made by a larger caliber weapon but in looking at the hole, he could not tell exactly what caliber weapon it was.
Chief Investigator Robert Stewart stated that he went to Wilmington, Delaware, where he picked up the automatic pistol and shoes from the Wilmington, Delaware Police Department along with $1,300.00 in $20.00 bills. This money was introduced into evidence as State's Exhibit 12A. Stewart also picked up a Beasley's Food Mart grocery bag and this bag was introduced into evidence as State's Exhibit 13.
Lieutenant Simon Edwards of the Wilmington, Delaware Police Department testified that on Sunday, July 13, 1975, he went to Jerry Toston's home at 826 East 28th Street in Wilmington with a fugitive warrant and Toston's house was surrounded and he was arrested.
On voir dire out of the presence and hearing of the jury Lieutenant Edwards stated that he first went to Andrew Clayton's home with a search warrant and arrested him. When he was placing Toston under arrest, he saw an adult at the top of the stairs. He went upstairs and found Mrs. Toston had run in a bedroom with two children. He saw a pistol lying in plain view next to a pillow at the head of the bed and it was the .45 caliber automatic heretofore mentioned. After being advised of her constitutional rights Edwards asked her if she would sign a consent to search the house and she agreed and did sign a consent to search saying she did not have anything to hide. Edwards asked Toston about consenting to the search and he said to go ahead and conduct a search as he had nothing to hide.
When the jury returned to the jury box, Edwards identified the automatic pistol. He also found a black bag under the mattress containing various articles and the money in $20.00 bills. Several pairs of shoes were confiscated. The container for the money was introduced as State's Exhibit 15. All of these items were turned over to Investigator Stewart including the tennis shoes and other items found at defendant Andrew Clayton's house.
Preston Moorer testified that on July 11, 1975, he saw both appellants on Brownwood Avenue between 3:00 and 3:30 p.m. and took them to the old Mattie Rhodes Hospital and let them out of his car. They were both sweating at the time he picked them up on July 11, 1975. Debbie Reynolds testified that she was with Preston Moorer when she saw the defendants but she did not get in the car with Moorer and the defendants.
Alex McDowell, a Bay Minette Police Officer, testified that he saw the defendants in Bay Minette the day before the murder and the Cadillac car they were in was black and had a Delaware tag. He checked the tag with the N.C.I.C. and found that it was not stolen.
James Hinote testified that he owned a Gulf Station near Beasley's Grocery Store and that on July 11, 1975, around 4:00 p.m., he saw a black Cadillac come out of the Beasley Grocery Store parking lot with squealing tires. It had a Delaware tag and he had seen the same car at his station that morning around 8:00 a.m.
Ed McMillan was a mechanic and his place of business was on Blackburn Street and on the afternoon of July 11, 1975, he heard gun fire near the scene of the shooting.
Phyllis Jackson testified that she was staying at the Southern Host Motel with Andrew Clayton in Bay Minette the evening before the murder. That she came with the defendant from Delaware to Bay Minette on July 4, 1975. That between 7:30 and 8:00 a.m., on Friday, July 11, 1975, the defendants picked her up at the motel and dropped her at 900 McGee Street. That at about 1:30 p.m., she saw them again at Beasley's Store. Around *Page 164 
3:30 or 4:00 p.m., Toston and Clayton came back to McGee Street and told her they were ready to leave. She was surprised as they had told her they were going to spend the weekend, but they got in the Cadillac and headed for Delaware. They got as far as Charlotte, North Carolina, and spent the night. The next morning they arrived in Wilmington. That night she went to Toston's house. Phyllis saw a pistol in Clayton's car on the morning they left the motel in Bay Minette, similar to the pistol admitted into evidence. Toston had the gun.
There were no eye witnesses to this murder but a strong web of circumstantial evidence enshrouds these appellants. In cases where the State relies to a great extent on circumstantial evidence for a conviction very wide latitude is allowed in making proof. Creel v. State, 53 Ala. App. 504, 301 So.2d 267;Hollenquest v. State, 53 Ala. App. 501, 301 So.2d 264; Tanner v.State, 291 Ala. 70, 277 So.2d 885.
The State's evidence is undisputed that these appellants lived in Delaware and they arrived in Bay Minette, Alabama, on July 4, 1975. On the morning of the day of the murder they were the first two people to enter Beasley's Store in that city. They were driving a black Cadillac with a Delaware tag and were seen leaving the parking lot at Beasley's Store at such a rapid rate of speed at 4:00 p.m., that the tires were squealing. They were seen walking along the road a short distance from where the body was found and gave Preston Moorer a dollar to carry them in his car to the old Mattie Rhodes Hospital located further away from the murder scene. Spent hulls and a live bullet were found in and around the station wagon where the body was found and a ballistics test showed the spent hulls and the bullet found embedded in the station wagon were fired from the same .45 automatic pistol found on Sunday, July 13, 1975, in the home of one of the appellants in Wilmington, Delaware. This pistol was seen in the hands of Toston on the morning of the day of the murder. The plaster cast of one of the footprints at the scene fit a shoe worn by one of the appellants. $1,300.00 in $20.00 bills were found in the home of one of the appellants in Wilmington along with a large grocery shopping bag that had the name "Beasley's Fine Foods Since 1937, Bay Minette, Ala." printed on the outside of the bag. Three .22 caliber bullets were removed from the head of the deceased during the autopsy but a .22 caliber pistol was not found.
We do not know which one of the appellants fired the .45 automatic or the .22 caliber pistol that resulted in the death of the deceased. The controlling law on cases of this kind has been many times expressed by this Court and the Supreme Court of Alabama. We quote the following from Stokley v. State,254 Ala. 534, 49 So.2d 284:
 "It is well established that when, by prearrangement or on the spur of the moment, two or more persons enter upon a common enterprise or adventure and a criminal offense is contemplated, then each is a conspirator, and if the purpose is carried out, each is guilty of the offense committed, whether he did any overt act or not. This rests on the principle that one who is present, encouraging, aiding, abetting, or assisting, or who is ready to aid, abet, or assist the other in the perpetration or commission of the offense, is a guilty participant, and in the eye of the law is equally guilty with the one who does the act. Such community of purpose or conspiracy need not be proved by positive testimony. It rarely is so proved. The jury is to determine whether it exists, and the extent of it, from the conduct of the parties and all the testimony in the case. *Page 165 Morris v. State, 146 Ala. 66, 41 So. 274, and cases cited; Jones v. State, 174 Ala. 53, 57 So. 31; Teague v. State, 245 Ala. 339, 16 So.2d 877.
 "When two or more persons enter upon an unlawful purpose, with a common intent to aid and encourage each other in anything within their common design, they are each responsible, civilly and criminally, for everything which may consequently and subsequently result from such unlawful purpose, whether specifically contemplated or not. Jones v. State, supra; Jolly v. State [94 Ala. 19, 10 So. 606], supra; Tanner v. State, 92 Ala. 1, 9 So. 613."
Lieutenant Simon Edwards of the Wilmington, Delaware Police Department testified that he searched the appellant Clayton's home pursuant to a search warrant, and that he obtained the written consent of appellant Toston's wife and the oral consent of Toston to search their home.
Courts throughout the country have consistently held that searches without warrants are constitutionally permissible when executed with the owner's consent. Securing a search warrant is wholly unnecessary when consent to search has been freely given. Hernandez v. State, 50 Ala. App. 558, 280 So.2d 831;Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041,36 L.Ed.2d 854.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellants and have found none.
The judgments of convictions in these cases are affirmed.
AFFIRMED.
TYSON, DcCARLO, and BOOKOUT, JJ., concur.