HARRIS, Judge.
Appellant was put to trial on a three-count indictment charging (1) burglary in the second degree, (2) grand larceny, and (3) buying, receiving, concealing or aiding in concealing stolen property. At arraignment attended by counsel appellant pleaded not guilty. The jury found appellant guilty of burglary in the second degree, and the Court sentenced him to imprisonment in the penitentiary for 10 years. He gave notice of appeal and requested a free transcript. The Court found him to be indigent and ordered a free transcript for him. Trial counsel was appointed to represent him on appeal, but failed to file a brief. This Court appointed counsel to represent him on this appeal.
When the jury found appellant guilty of burglary in the second degree this had the effect of acquitting him of the two other offenses charged in the indictment. The State made out a strong ease against appellant and it took the jury only 35 minutes to return a guilty verdict.
There was no request for the affirmative charge; there was no motion for a new trial; there were no exceptions reserved to the oral charge of the jury; and there were no adverse rulings on the admission of evidence which contained any merit. When the State rested its case appellant made a motion to exclude the State’s evidence which motion was overruled and denied. This puts us to a recital of the evidence pointing to the guilt of the appellant.
Mrs. Betty Self testified that she and her husband owned their home at Route 5, Box 400 A, Bessemer, Alabama, on January 30, 1975. She stated that around 1:30 p. m., she locked her house and she and a friend, Mrs. Betty Rickies, went to a neighbor’s house to pond fish. The distance from her home to the neighbor’s home was less than two blocks. They did not fish long as it was almost 3 o’clock and their children would be coming home from school. When she started to return home, she noticed an automobile parked in her carport. It was a green ear with a black top and she said it was an Oldsmobile. She said this Oldsmobile sped away from her house and she and Mrs. Rickies gave chase trying to get the tag number. She chased the car for about three miles going at a speed of 80 to 85 miles per hour. There were three occupants of the Oldsmobile and she could see two in front and one in the rear seat. This car had to stop for a stop sign and they pulled up and stopped immediately behind the Oldsmobile and the driver and the passenger in the front seat turned around and looked her directly in the face. The occupants were black men and the Oldsmobile did not have a tag on it but had a cardboard or paper of some kind on which was written “tag applied for at Jack Self Motors.” Mrs. Self stopped at Payne’s Grocery Store to get gas and while Mrs. Rickies was getting gas, Mrs. Self went in the service station and called the Sheriff’s Department and gave them a description of the Oldsmobile and said it was occupied by three black men.
After contacting the officers Mrs. Self returned home and found the bottom glass in her back door broken and the door partly opened. She made an inspection of her home and found several items missing, including one .20 gauge shotgun, one .410 gauge shotgun, one .22 caliber rifle, one stereo turntable and two speakers, one portable television, a fake diamond ring, a ring with some diamonds in it, and a dresser drawer in which she kept some money. Mrs. Self stated that most of the items were returned to her the next day by a sergeant from the Sheriff’s Department.
Mrs. Self further testified that the driver of the Oldsmobile turned his face to her when they were parked at the stop sign and she got a good look at his face for at least 15 seconds. She also saw the driver at the preliminary hearing and another time at the courthouse when the case was continued. She made a positive in-eourt identification of the appellant as the driver of the *110 Oldsmobile and stated that she made her identification based on the face to face confrontation at the stop sign on the highway.
Mrs. Betty Rickies testified that she was with Mrs. Self on the afternoon in question and accompanied her during the chase of the fleeing automobile. She stated that she put gas in the Self car while Mrs. Self was calling the Sheriff’s Office. While waiting for Mrs. Self to return, Deputy Sheriff Roy Field drove into the parking lot at the grocery store and she told the officer what had happened and gave him a description of the car occupied by the suspects.
Deputy Roy Field testified that on January 30, 1975, around 3:00 p. m., he was in uniform but was off duty and was driving his private car on 15th Street Road toward Warrior River. He saw an automobile speed up, come to a quick stop and a black male jumped out of the back seat of the car and got in another car parked on the side of the road. The officer went to Payne’s Grocery and talked to Mrs. Rickies. She told him what had transpired and the officer immediately went in pursuit of the three suspects. He approached the cars and got out with his pistol in his hand and arrested the occupants of the Oldsmobile. The third man jumped in a blue Chevrolet and sped from the scene. This officer stated that he knew appellant and he was the driver of the Oldsmobile. He ordered appellant and the other man in the car to get out and he handcuffed them. He made a positive in-court identification of appellant as the driver of the Oldsmobile. He further testified that at this time his brother-in-law drove up in his car and he had a mobile telephone and the officer got in the car and called the Sheriff’s Office on the mobile telephone. He stated the passenger in the Oldsmobile driven by appellant was Zackary Smith.
Detective Sergeant A. R. Bracewell of the Jefferson County Sheriff’s Department testified that he arrived at the scene in response to the call made by Deputy Field and found appellant and Smith handcuffed lying on the ground off the road. He further testified that he found a green Oldsmobile with a black top at the scene where Deputy Fields had appellant and Smith handcuffed. He looked in the back seat and saw several articles including one .20 gauge shotgun, one .410 gauge shotgun, one .22 caliber rifle, one stereo turntable and two speakers, one portable television and a dresser drawer with some change in it.
Zackary Smith testified in behalf of the appellant. He had previously pleaded guilty to this same burglary. He stated that he and appellant were riding around looking for junk cars on the afternoon of the burglary. Smith testified that appellant was driving the Oldsmobile and they stopped and picked up a third party. Smith stated that he directed appellant to pull into the driveway of the Self residence and that he and the third man burglarized the Self house and put the stolen articles in the back seat of the Oldsmobile where appellant was waiting for them with the motor running.
Appellant testified that he drove the Oldsmobile into the driveway at the Self house and that when Smith and the other man got out of the car and went toward the back of the house, he turned the automobile around and waited until they returned. When they returned and loaded the car with the articles they had taken from the house, appellant stated he drove away. He admitted that he had pleaded guilty to four previous burglaries and was on probation at the time the Self burglary was committed.
On cross-examination appellant stated that the third man was his brother, Curtis Lewis. He also admitted that he knew why they stopped at the Self house and knew the other two were burglarizing the house while he was waiting in the getaway car but denied breaking in himself. He further admitted that he did all the driving once the getaway car left the Self home.
Mr. Self testified as to the total value of the items taken from their home. He stated the aggregate value was $650.00.
This was a clear case of “hot pursuit” and appellant was caught red-handed with the *111 stolen articles in plain view in the back seat of the car he was driving. He was arrested within minutes after the burglary and after a high-speed chase. His claim that he did not have anything to do with the burglary and that he was just along for the ride is incredible and the jury returned a verdict in 35 minutes after the case was given to them.
This case is controlled by Title 14, Section 14, Code of Alabama 1940 and the case of Stokley v. State, 254 Ala. 534, 49 So.2d 284. See also Foster v. State, 43 Ala.App. 435, 191 So.2d 523.
This is one of the strongest circumstantial evidence cases to make its way to this Court. Circumstantial evidence is entitled to the same weight that direct evidence is entitled to provided it points to the guilt of the accused. Where the prosecution relies to a great extent on circumstantial evidence for a conviction, very wide latitude is allowed in making proof. Willis v. State, 37 Ala.App. 185, 66 So.2d 753; Sumeral v. State, 39 Ala.App. 638, 106 So.2d 270; Creel v. State, 53 Ala.App. 504, 301 So.2d 267.
If there is a reasonable inference to prove existence of the corpus delicti, the Court should submit to the jury for its consideration the question of the sufficiency and weight of the evidence tending to support that inference. Hines v. State, 260 Ala. 668, 72 So.2d 296; Creel v. State, supra.
We have carefully considered the entire record and find no reversible error and the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.