HARRIS, Judge.
By agreement of the parties appellant was put to trial upon two indictments charging grand larceny. The grand jury of Pike County indicted appellant for the theft of a 1965 model Ford truck, the personal property of Carter Brothers Manufacturing Company, Inc., a corporation, and he was indicted for the theft of a John Deere farm tractor, model 4230, the personal property of Ferrell Gibson. Appellant was represented by counsel of his choice and at arraignment pleaded not guilty. The jury returned separate verdicts of guilty as charged in each indictment and the Court sentenced appellant to five years imprisonment in the penitentiary in each case. Appellant gave notice of appeal and the sentences were suspended pending appeal. Appellant was admitted to bail in the amount of $3,000.00 in each case pending appeal.
At the conclusion of the State’s case, appellant made a motion to exclude the State’s evidence on the grounds that the State failed to prove a prima facie case and failed to adduce any evidence to corroborate the testimony of the two accomplices who testified for the State. The motion was overruled and this puts us to a recital of the evidence in the case.
*189 Mr. Ferrell Gibson testified that he lives about eight miles south of Troy, Alabama, on Highway 231, and appellant lived two or three miles from his place. He had known appellant all of his life. He stated that on July 25, 1974, he owned a John Deere tractor which was parked near a peanut drying shed located approximately one hundred yards from his home. That the tractor was practically new and was worth eight to ten thousand dollars. He missed the tractor the following afternoon and immediately notified the Sheriff of Pike County.
He further testified that it rained the previous afternoon and he was able to track the tractor from the place where it had been parked to Highway 231 and across the highway into a field for about a quarter of a mile and he could tell that the tractor was loaded on a truck. He described the place where the tractor was loaded on a truck. He said there was a dug out place so that the wheels of the truck would be low enough to get the tractor on the truck. He stated there was a cross-tie at the loading place and the truck body made of wood and metal had been torn or broken off the truck and was on the ground at the loading site.
Mr. Gibson further testified that between 1:00 and 2:00 p. m. on the afternoon of the date his tractor was removed from his premises he saw appellant and a black man drive by the place where he was working on two occasions and appellant was driving at a very high rate of speed. He subsequently learned that the black man in the car with appellant was Arthur Lee Griffin. Griffin turned out to be one of appellant’s accomplices in the theft of the truck and tractor.
Several months later this tractor was recovered by the Sheriff’s Department and was brought to Troy where Mr. Gibson checked the serial number on the tractor with the bill of sale given him at the time he purchased the tractor and the serial numbers on the tractor and the bill of sale were identical. The tractor was surrendered to Mr. Gibson.
Mr. W. W. Carter testified that he lived five miles from Brundidge, Alabama, at a place called Hamilton’s Cross Roads. He stated that on the night of July 25, 1974, a 1965 Ford model F600 long wheel base Ford truck with a 20 foot body on it was taken from the premises of Carter Brothers Manufacturing Company, Incorporated. He described the truck as having a metal floor and it had a wood-slat body on it. He valued the truck and body at fifteen hundred dollars. He said they used this truck quite often around the plant and the tire rack had come loose. On Thursday afternoon, July 25,1974, he instructed one of the employees to weld the tire rack back in place Friday morning. On Friday morning this employee went to get the truck and found it missing. He further testified that he had not seen the truck since it was taken from the premises of the company.
Arthur Lee Griffin, a co-indictee of appellant, testified for the State in this case. He stated he had known appellant all of his life and had worked for him at times, but not on a regular basis. He lived in Brun-didge, Alabama, and on the date the truck and tractor were stolen appellant came to see him at Moultry Service Station in the town of Brundidge. Appellant was driving a blue Oldsmobile Cutlass car and asked Griffin to get in the car and ride around with him. Appellant stopped and bought some beer and both drank some beer and appellant asked Griffin if he wanted to make some fast money and Griffin asked appellant how much money he had in mind for him. Appellant told him five hundred dollars and this amount of money was agreeable to Griffin. Appellant then drove Griffin to Carter Brothers Manufacturing Company and pointed to a truck on the premises and told Griffin he wanted him to get the truck. Appellant asked Griffin if he could “hot wire” the truck and Griffin said he did not know anything about hot wiring a truck. Appellant then wanted him to talk to Willie James Moultry about hot wiring the truck and Griffin agreed to talk to Moultry. Appellant then drove the route he wanted Griffin to take after he and Moultry got the truck. The route led to Mr. Ferrell Gibson’s home on Highway 231 where appellant showed Griffin the tractor *190 parked near a peanut shed and told him he wanted to get this tractor and load it on the truck they were to get from Carter Brothers Manufacturing Company. Appellant and Griffin rode around looking for a place where they could load the tractor. They spotted a place about a quarter of a mile from Mr. Gibson’s home in a field that belonged to the Haisten brothers. Appellant picked Griffin up at about 1:00 p. m. on the date they were to steal the truck and tractor, and after showing him the route to take, the tractor he wanted to steal, and the place where it was to be loaded, the time was about 3:00 p. m. Appellant then took Griffin back to Brundidge with the understanding he was to see Willie James Moul-try about hot wiring the truck. Appellant had previously offered to pay Moultry $500.00 to help steal the truck.
Griffin went home and he and some friends started barbecuing. Appellant came to Griffin’s house about dark on the same day and Griffin left with appellant in the same car they had been in earlier that afternoon and went to Willie James Moul-try’s house to pick him up. Moultry got in his pickup truck and drove to appellant’s home. Appellant then drove Griffin and Moultry to Carter Brothers Manufacturing Company. In the car at that time was appellant’s girl friend. Appellant left Griffin and Moultry to get the truck and drove away with his girl friend.
Moultry “hot wired” the truck and Griffin drove the truck to' appellant’s home where he was waiting for them to bring the stolen truck. When Moultry learned that appellant planned to steal Mr. Gibson’s tractor, he decided that he was not going to get involved in any more stealing. The truck was low on gas and appellant asked Moul-try if he would go to his father’s service station and get a five-gallon can of gas. Moultry agreed to do this, but when he brought the can of gas back, he left and went home. Moultry was also indicted for the theft of the truck and tractor. He testified that he was never paid the $500.00 promised him by appellant.
Griffin further testified that after Moul-try left, he and appellant drove the truck to the field where they were going to load the tractor. He stated that appellant went to get the tractor and he stood on the side of Highway 231 with a flashlight. Appellant instructed him to signal to him with the flashlight when he heard a truck or trucks approaching on the highway and he would crank the tractor and drive it across the highway to the place where they had decided to load it on the stolen truck. When Griffin heard trucks approaching, he sig-nalled appellant with the flashlight and appellant cranked the tractor and drove it across Highway 231 and into the field where the truck was parked.
Appellant and Griffin discovered they could not get the tractor on the truck with the truck bodies on it. Appellant tied a chain to the body of the truck and to the tractor and used the tractor to pull the bodies off each side of the truck. Then they took a shovel and dug out a place for the back wheels of the truck to get low to the ground to load the tractor. They tried to drive the tractor onto the bed of the truck but were unable to do so because the ground was wet. Appellant left and went somewhere and got a cross-tie and with the use of the cross-tie they were able to drive the tractor upon the bed of the truck. They carried the truck and tractor to the State of Georgia and left them at some town or city — either Hines City or Bain-bridge. Appellant’s girl friend followed them in appellant’s car and they came back to Alabama with appellant driving. Griffin testified that appellant never paid him the $500.00 which he promised him for his part in stealing the truck and tractor.
The truck bodies and cross-tie were left in the field where the truck was loaded and were found by Mr. Gibson when he traced the tracks of his tractor to the field where it was loaded on the truck.
Winston Fraizer testified that he lived in Brundidge and knew appellant and Arthur Lee Griffin. He stated that he recalled the occasion, but not the date, that the truck and tractor were stolen. That he was at *191 Griffin’s house on that date barbecuing and appellant drove up in a blue Oldsmobile car about 8:00 p. m. and Griffin went to the car. After talking to appellant for a few minutes, Griffin told him to clean up the barbecue and he got in the car with appellant and left and he did not see them anymore that night.
Appellant did not testify but he offered the testimony of his mother whose testimony was in the nature of an alibi. She testified that appellant was with her on the afternoon and night in question. Appellant also offered the testimony of two witnesses who testified to his good character.
Appellant’s major contention for a reversal in this case is the failure of the State to adduce evidence to corroborate the testimony of the accomplices. We do not agree.
Under the statute requiring corroboration of the testimony of accomplices to authorize conviction of a felony (Title 15, Section 307, Code of Alabama 1940), the corroborative evidence need not be strong, nor sufficient of itself to support the conviction, the criterion being that it legitimately tends to connect the accused with the offense. Moore v. State, 30 Ala.App. 304, 5 So.2d 644; Goodman v. State, 52 Ala.App. 265, 291 So.2d 358; Cunningham v. State, 54 Ala.App. 656, 312 So.2d 62.
Nor need such corroborative evidence directly confirm any particular fact stated by the accomplice. Skumro v. State, 234 Ala. 4, 170 So. 776; Cameron v. State, 49 Ala.App. 482, 273 So.2d 242.
“Any circumstantial evidence is sufficient to corroborate if it proves that the accused was connected with the criminal act, or tends to connect him with the commission thereof, or if such connection may reasonably or clearly be inferred from the corroborative evidence; and where the accomplice is strongly corroborated by facts and circumstances connecting accused with the crime, a conviction will be sustained.” 23 C.J.S. Criminal Law, § 812(3), page 109.
The corroborating facts and circumstances in this case certainly connected appellant with the crime charged in the indictment. He was seen by the owner of the stolen tractor between 1:00 and 2:30 p. m., with one of the accomplices in his car, on the date the tractor was stolen driving at a high rate of speed near the place where the tractor was parked. He was seen by an independent witness that same night when he came to the home of one of the accomplices and picked him up and drove away. The owner of the tractor traced the route taken by the tractor to the field where it was loaded on a truck. At the place where the tractor was loaded on the truck the owner of the truck found a dug out place in the ground so that the back wheels of the truck could be lowered closer to the ground to facilitate putting the tractor on the bed of the truck. The bodies of the truck were found on the ground at the loading place along with a cross-tie that had been used in the loading of the tractor. All of these physical facts corroborated the testimony of accomplice Griffin in minute detail and tended to connect appellant with the commission of the crime.
Where there is legal evidence from which the jury can by fair inference find the defendant guilty, this Court has no right to disturb the verdict of the jury. Whether there is such evidence is a question of law, its weight and probative value are for the jury. Haggler v. State, 49 Ala.App. 259, 270 So.2d 690; Bass v. State, 55 Ala.App. 88, 313 So.2d 208; Washington v. State, 55 Ala.App. 116, 313 So.2d 544; Hawkins v. State, 53 Ala.App. 89, 297 So.2d 813.
The State’s case rested on circumstantial evidence. Circumstantial evidence is entitled to the same weight as direct evidence provided it points to the guilt of the accused. Creel v. State, 53 Ala.App. 504, 301 So.2d 267.
The evidence presented by the State was sufficient to support the judgment of conviction.
AFFIRMED.
TYSON and DeCARLO, JJ., concur.
*192 BOOKOUT, J., concurs in the result.
CATES, P. J., not sitting.